# FAMILY CODE OF UKRAINE

## Section I  GENERAL PROVISIONS

### Chapter 1 FAMILY. FAMILY RELATIONS REGULATION

Article 1. Task of the Family Code of Ukraine

1. The Family Code of Ukraine sets forth principles of marriage, personal non-property and property rights and responsibilities of spouses, grounds for the creation, contents of personal non-property and property rights and responsibilities of parents and children, adopters and adopted persons, other family members and relatives.

2. The present Code governs family relations in view of:

- promoting family as a social institution and as a union of specific persons;
- promoting spirit of responsibility before parents, children and other family members;
- building up family relations at an equal footing, mutual love and respect, mutual assistance and support;
- ensuring family care, spiritual and physical development opportunities to each child.

Article 2. Parties to Family Relations Governed by the Family Code of Ukraine

1. The Family Code of Ukraine governs family personal non-property and property relations between spouses, parents and children, adopters and adopted persons, between the mother and the father of a child in respect of his/her education, development and maintenance.

2. The Family Code of Ukraine governs family personal non-property and property relations between grandmother, grandfather, great-grandmother, great-grandfather and grandchildren, great-grandchildren, brothers and sisters related to one another by blood, stepmother, stepfather and stepdaughter, stepson.

3. The Family Code of Ukraine governs family personal non-property and (or) property relationsbetween other family members referred to in the present Code.

4. The Family Code of Ukraine does not govern family relations between cousins, aunt, uncle and niece, nephew, and between other relatives by origin.

Article 3. Family

1. The family is the primary and basic unit of the society.
2. A family is composed of persons that live together, have joint household, mutual rights and responsibilities. A couple is considered to be a family even if spouses live separately as a result of training,work, medical treatment, care of parents, children and

for other valid reasons. A child belongs to the family of his/her parents even if he/she lives separately.

3. A single person has the rights of a family member.

4. A family is founded based on marriage, blood ties, adoption, as well as on other grounds which are not contrary to law and morals of the society.

Article 4. Right of a Person to a Family

1. A person that has attained the age of marriage enjoys the right to found a family. A person that has not attained the age of marriage enjoys the right to found a family in cases provided for in Article 23, paragraph 2, of the present Code.

 2. A person that has given birth to a child may found a family notwithstanding his/her age.

3. Everyone has the right to live in the family. A person may be subject to enforceable separation from the family in cases and according to the procedure prescribed by law.

 4. Everyone has the right to respect for his/her family life.

Article 5. State Protection of the Family

 1. The State protects the family, childhood, motherhood, fatherhood and creates conditions for the strengthening of the family.

2. The State creates conditions for motherhood and fatherhood, ensures protection of mother and father's rights, materially and morally encourages and supports motherhood and fatherhood.

3. The State ensures the priority of family care of children.

4. The State extends protection to every child deprived of appropriate parental care.

5. There shall be no interference in one's own family life except as prescribed by the Constitution of Ukraine (254k/96-BP).

Article 6. Child

1. A person that has not attained the full age enjoys a child's legal status.

2. A child that has not attained the age of 14 is considered to be a minor. A child from 14 to 18 years old is considered to be a juvenile.

Article 7. General Principles of Family Relations Regulation

1. The present Code and other regulations govern family relations.

2

2. Family relations may be settled upon agreement between those involved therein.

3. Family relations are regulated insofar as it is acceptable and possible in terms of their parties' interests and the interests of the society.

4. Family relations are regulated subject to the right of privacy inherent in their parties, their right to personal liberty and arbitrary non-interference in their family life

5. A party to family relations may not be privileged or restricted on the ground of race, color, sex, political, religious and other opinion, ethnic and social origin, property status, place of residence, language and other grounds.

6. Women and men enjoy equal rights and assume equal responsibilities in family relations, marriage and family.

7. A child should be secured the possibility to exercise his/her rights as laid down in the Constitution of Ukraine (254k/96-BP), Convention on the Rights of the Child (995_021) and other international legal instruments Ukraine is bound by.

8. Family relations should be regulated with utmost consideration of the best interests of a childand family members that are unable to work.

9. Family relations are regulated based on the principles of justice, integrity and reasonability in accordance with morals of the society.

10. Every party to family relations enjoys the right to an effective legal remedy.


Article 8. Application of the Civil Code of Ukraine to Family Relations Regulation

1. Whenever the present Code does not regulate property relations between spouses, parents and children, other family members and relatives, such relations are governed by relevant provisions of the Civil Code of Ukraine (1540-06) insofar as this is not inconsistent with raison d'etre of family relations.


Article 9. Family Relations Regulation upon Agreement between the Parties

 1. Spouses, a child's parents, parents and children, other family members and relatives whose relations are governed by the present Code may regulate relations between them upon agreement (agreement) insofar as this is not inconsistent with the provisions of the present Code, other laws and morals of the society.

2. Persons living in a family, as well as relatives by origin whose relations are not governed by the present Code may regulate their family (relatives) relations upon a agreement, which should be drawn in a written form. Such an agreement is binding unless it contradicts the provisions of the present Code, other laws of Ukraine and morals of the society.


Article 10. Application of the Legal Analogy and Inference from General Principles of Law

3

1. Whenever the present Code or an agreement does not regulate some family relations, the provisions of the present Code that govern similar relations (legal analogy) are applied to such relations.

2. Whenever it appears impossible to apply legal analogy to family relations regulation, such relations are governed in accordance with general principles of the family legislation (inference from general principles of law).


Article 11. Having Regard to Customs in Judicial Trial of Family Disputes

1. When considering a family dispute, a court, based on the application submitted by the party concerned, may draw upon a local custom, as well as a custom of the national minority the parties or one of the parties belongs to, insofar as such customs are not inconsistent with the provisions of the present Code, other laws and morals of the society.


Article 12. Calculation of Time-Limits Prescribed in the Present Code

1. Time-limits prescribed in the present Code are calculated in accordance with the Civil Code of Ukraine (1540-060.


Article 13. International Treaties of Ukraine

1. International treaties to which the Verkhovna Rada of Ukraine has given its consent to be bound by make a part of national family legislation of Ukraine.


**Chapter 2** EXERCISING FAMILY RIGHT AND DISCHARGING FAMILY RESPONSIBILITIES. PROTECTING FAMILY RIGHTS AND INTERESTS


Article 14. Exercising Family Rights

1. Family rights are closely attached to a person and as such may not be transferred to another person.

2. Whenever a child or a person whose legal capacity is limited appears to be unable to exercise his/her rights on his/her own, such rights are exercised by parents, a custodian or by such persons themselves with the assistance of the parents or the custodian.

3. The custodian exercises family rights of the legally incapable person.


Article 15. Discharging Family Responsibilities

1. Family responsibilities are closely attached to a person and as such may not be put on another person.

4

2. If a person has been found to be incapable, his/her family obligation of personal non-property nature is ceased because of impossibility to fulfill it. A property obligation of an incapable person is fulfilled by his/her custodian on the account of that person.

3. If, as result of a mental handicap, serious illness or any other valid reason, a person is unable to fulfill a family obligation, such a person shall not be deemed as avoiding this obligation.

4. Non-fulfilling or avoiding to fulfill a family obligation may be a ground for applying consequences set forth in the present Code or the agreement (agreement ) between the parties concerned.


Article 16. Assisting Parents under the Full Age in Exercising their Parental Rights and Fulfilling their Parental Responsibilities

1. Whenever the mother, the father of a child has not attained the full age, the grandmother, the grandfather of the child's parent who is under the full age shall have the duty to assist him/her in exercising his/her parental rights and fulfilling his/her parental responsibilities.


Article 17. Assistance Given by Competent Authorities in Charge of Family Care to Persons in Exercising their Family Rights and Discharging their Family Responsibilities

1. Competent authorities in charge of family care assist persons in exercising their family rights and discharging their family responsibilities, in the scope and way prescribed by the present Code and other legal acts.


Article 18. Protecting Family Rights and Interests

1. Every party to family relations that has attained the age of 14 has the right to directly seek a remedy in court to protect his/her own right or interest.

2. The court applies remedies specified by law or agreement between the parties concerned.

Remedies to protect family rights and interests include:

1) establishing a legal relation,
2) enforcing fulfillment of an obligation, which has been voluntary disregarded,
3) ceasing and canceling a legal relation,
4) terminating behavior, which violates family rights,
5) re-establishing the legal relation, which existed before violation of the right,
6) repairing material and moral damage unless the present Code or the agreement provides otherwise.


Article 19. Involvement of Competent Authorities in Charge of Family Care in the Protection of Family Rights and Interests

1. In cases provided for by the present Code, a person has the right to firstly seek protection of his/her family rights and interests in the competent authority in charge of family care.

2. A decision taken by the competent authority in charge of family care is binding if, within ten days from the date of such a decision, the person concerned has not applied to court in view of protecting his/her rights or interests, except the case specified in Article 170, paragraph 2, of the present Code.

3. Seeking protection in the competent authority in charge of family care does not deprive the person concerned of the right to seek legal remedies in a court.If an action is filed with the court, the competent authority in charge of family care ceases considering the application lodge therewith. Filing an action with the court suspends enforcement of the decision made by the competent authority in charge of family care.

4. The competent authority in charge of family care necessarily takes part in judicial trials of disputes with regard to the involvement of one of parents in bringing up the child, child's place of residence, deprivation and re-institution of parental rights, access to the child by mother, father who have been deprived of parental rights, removal of the child from a person that keeps him/her contrary to law or judicial decision, parental administration of child's property, cancellation and invalidationof the adoption.

5. The competent authority in charge of family care submits a written opinion to the court, such opinion being related to dispute's settlement based on information that has been obtained as a result of surveying living conditions of the child, parents and other persons wishing to live with the child and be involved in child's bringing up, as well as based on other documents of relevance to the case.

6. The court may disagree with the opinion submitted by the competent authority in charge of family care if such an opinion appears to be ill-grounded and inconsistent with the best interests of the child.


Article 20. Applying Statute of Limitations in respect of Requirements Arising out of Family Relations

1. Statute of limitations is not applied to requirements arising out of family relations except as set forth in Article 72, paragraph 2, Article 129, paragraph 2, Article 138, paragraph 3, and Article 139, paragraph 3, of the present Code.

2. The court applies statute of limitations in accordance with the Civil Code of Ukraine (1540-06) in cases specified in paragraph 1 of the present Article unless the present Code provides otherwise.


**Section II MARRIAGE. SPOUSES' RIGHTS AND RESPONSIBILITIES**


**Chapter 3** GENERAL PROVISIONS

Article 21. Notion of Marriage

6

1. A marriage is a family union between a woman and a man, duly registered in a public civil status act registration authority.
2. Woman and man's living in a family without being married does not constitute a ground for them to have rights and responsibilities of a married couple.

3. A religious worship for marriage does not constitute a ground for the woman and man to have rights and responsibilities of a married couple, except when such a religious worship takes place before the creation or renewal of public civil status act registration authorities.

Article 22. Marriageable Age

1. Marriageable age for women is 17 years and for men – 18 years.

2. Persons wishing to register their marriage shall be of marriageable age as of the date of marriage registration.

Article 23. Right to Marry

1. Persons that have attained marriageable age have the right to marry.

2. Upon application of a person that has attained 14 years, a court may grant him/her the right to marry if it is found than such a marriage satisfies his/her interests.

Article 24. Free Marriage

1. A marriage shall be based on a free consent of a women and men. Forcing a women and men into a marriage is not permitted.

 2. Registering a marriage with a person found legally incapable, as well as with a person that has not realized the significance of his/her actions and (or) was unable to keep them under his/her control, entails the consequences set forth in Articles 38 – 40 of the present Code.

Article 25. Monogamy

 1. A woman and a man may enter only one marriage at the same time.

2. A woman and a man have the right to remarry only after the previous marriage has been dissolved.

Article 26. Persons that May Not Be Married to Each Other

 1. May not be married to each other persons that are relatives related to one another by blood.

2. May not be married to each other full blood and half blood brother and sister. Full blood brothers and sisters are those who have common parents. Half-blood brothers and sisters are those who have either common mother or common father.
3. May not be married to each other cousins, aunts, uncles and nephews, nieces who are related by blood.

4. A court may decide to grant the right to marriage between the natural child of the adopter and the child he/she adopted, as well as between children that he/she adopted.

5. May not be married to each other the adopter and the child he/she adopted. A marriage between the adopter and the child he/she adopted may be registered only if the adoption has been terminated.

### Chapter 4 STATE REGISTRATION OF MARRIAGES

Article 27. Significance of State Registration of Marriages

1. State registration of marriages is established with a view to ensuring stable relations between woman and man, protection of rights and interests of married couples, their children, as well as in the interests of the State and society.

2. State registration of marriages is conducted solemnly.

3. State registration of marriages is certified by the Marriage Certificate whose specimen is approved by the Cabinet of Ministers of Ukraine.

Article 28. Application for Marriage Registration

1. A woman and a man file the application for marriage registration with any public civil status act registration authority of their choice.

2. A woman and a man file the application for marriage registration in person.

3. Whenever a woman and (or) a man are unable, for valid reasons, to personally file the application for marriage registration with a public civil status act registration authority, such an application, certified by a notary, may be submitted by their legal representatives. Powers of such legal representatives should be certified by a notary.

4. If a marriage is not registered the fixed day, the application for marriage registration remains valid within three months from the date of its filing.

Article 29. Informing Persons that Have Filed an Application for Marriage Registration on their Rights and Responsibilities

1. A public civil status act registration authority shall have the duty to inform persons that have filed an application for marriage registration on their rights and responsibilities as would-be spouses and parents, as well as on responsibility for concealing obstacles to marriage registration.

Article 30. Mutual Awareness of Persons that Have Filed an Application for Marriage Registration of the State of Health

1. Persons that have filed an application for marriage registration should inform each other of the state of their health.

2. The State ensures the creation of conditions for medical examination of persons that have filed an application for marriage registration.

3. The manner in which medical examination of persons that have filed an application for marriage registration is conducted shall be established by the Cabinet of Ministers of Ukraine.

4. Medical examination results are confidential and may be made known only to the persons that have filed an application for marriage registration.

5. Concealing serious disease, as well as illness, which is dangerous for the other of spouses, their descendants may constitute a ground for finding the marriage invalid.


Article 31. Engagement

1. Persons that have filed an application for marriage registration are deemed to be engaged.

2. Engagement does not create the obligation to marry.

3. The person that has given up the marriage shall have the duty to reimburse to the other party expenses the latter has incurred in connection with preparation for the marriage registration and the wedding. Such expenses are not subject to reimbursement if giving up the marriage is explained by unlawful, immoral conduct on the part of the bride, fiance, by his, her hiding circumstances of essential importance for giver-up (serious illness, existence of a child, criminal record, etc.).

4. Whenever a person that has been offered a gift on the occasion of the future marriage gives up the marriage, the deed of gift, upon the donor's request, may be terminated judicially. If the deed is terminated, the person should return back the gift she/he has been offered and in case that gift was not preserved – pay back its cost.


Article 32. Time of Marriage Registration

1. A marriage is registered after the expiration of a period of one month after the date on which the persons have filed their application for marriage registration. Should there be serious reasons, the manager of the public civil status act registration authority permits to register the marriage prior to the expiration of this time-limit.

2. If the bride appears to be pregnant, has given birth to a child and if there is a real threat to the life of the bride or fiance, the marriage is registered the day on which the application concerned has been filed.

3. Should obstacles to marriage registration be available, the manager of the public civil status act registration authority may delay marriage registration for three months maximum. Decision on such a delay may be appealed against to a court.

Article 33. Place of Marriage Registration

1. A marriage is registered in the premises of the public civil status act registration authority. Upon request of the bride and fiance, their marriage may be solemnly registered in another place.

 2. Upon request of the bride and fiance, their marriage may be registered in the place where they live, where an in-hospital medical treatment is provided or in any other place if, for valid reasons, they are unable to appear in the public civil status act registration authority.


Article 34. Marriage Registration in the Presence of the Bride and the Fiance

1. The presence of the bride and the fiance at the registration of their marriage is compulsory.

2. Marriage registration through a representative is not permitted.


Article 35. Right to Choose a Family Name at the Marriage Registration

1. The bride and the fiance are free to choose the family name of one of them as a one family name of spouses or to continue to bear their pre-marriage family names.

2. The bride and the fiance may add to their own family names the family name of the bride or the fiance. Whenever both of them wish to have double family name, the family name, which will go the first is determined upon their agreement. Having more than two family names is not allowed if a custom of the national minority the bride and (or) the fiance belong to does not provide otherwise.

3. If upon marriage registration the bride, the fiance already has a double family name, he, she is free to substitute the family name of another one for one of the parts of his, her family name.


Article 36. Legal Consequences of the Marriage

1. A marriage is a ground for the arising of spouses' rights and responsibilities.

2. A marriage may not be a ground for giving privileges or advantages to a person, as well as imposing restrictions of his/her rights and freedoms enshrined in the Constitution (254k/96-BP) and laws of Ukraine.


Article 37. Legality of Marriage

1. A marriage is legal, except as provided for in Article 39, paragraphs 1 – 3, of the present Code, and when the court has not found it invalid.

**Chapter 5** INVALIDITY OF MARRIAGE

Article 38. Grounds for Marriage Invalidity

1. Violation of provisions of Articles 22, 24 – 26 of the present Code shall be the ground for marriage invalidity.

Article 39. Invalid Marriage

1. A marriage registered with already married person whose first marriage has been registered is deemed to be invalid.

2. A marriage registered between persons that are relatives related to one another by blood, as well as between full blood brother and sister is deemed to be invalid.

3. A registered marriage to a person found incapable is deemed to be invalid.

4. The public civil status act registration authority, upon application of the person concerned, cancels the record of marriage registered with persons referred to in paragraphs 1 – 3 of the present Article.

5. Whenever a marriage has been registered with already married person, in case of terminating the previous marriage prior to canceling the record of the second marriage, this second marriage becomes valid upon termination of the previous marriage.

6. The record of marriage shall be cancelled irrespectively of the death of the persons with whom the marriage was registered (paragraphs 1 – 3 of the present Article), as well as dissolution of this marriage.

Article 40. Marriage, which is Found Invalid Judicially

1. A marriage is found invalid judicially if it has been registered without free consent of the woman and man.  In particular, the consent is not considered to be a free one if, upon marriage registration, the person concerned was suffering a mental handicap, was drunk, drugged, intoxicated as a result of which he/she did not fully realize the significance of his/her actions and (or) was unable to control them, or if the marriage has been registered as result of physical or mental violence.

2. A marriage is found invalid judicially in case of fictitious marriage.  A marriage is deemed to be sham if it has been entered into by the woman and man or by one of them without intention to found a family and acquire spouses' rights and responsibilities.

3. A marriage may not be found invalid if, upon judicial trial of the case, circumstances, which proved the absence of the person's consent to marry or his/her unwillingness to found a family disappeared.

Article 41. Marriage, which May Be Found Invalid Judicially

 1. A marriage may be found invalid judicially if it has been registered:

1) between the adopter and his/her adopted child in violation of Article 26, paragraph 4, of the present Code;

2) between cousins; aunt, uncle and nephew, niece;

3) with a person that concealed his/her serious disease or illness dangerous to another spouse and/or their descendants;

4) with a person under marriageable age that has not been granted the right to marry.

2. When considering a case related to invalidation of a marriage, the court takes into account the extent to which the marriage in question infringes on the rights and interests of the person concerned, how long the spouses lived together, the nature of their relationships, as well as other essential circumstances.

3. A marriage may not be found invalid if the married woman is pregnant or if persons referred to in paragraph 1, subparagraphs 1, 2 and 4, of the present Article have given birth to a child or if the person under marriageable age has attained such age or has been granted the right to marry.


Article 42. Persons that May Take a Legal Action for Marriage Invalidation

1. The following persons may take a legal action for marriage invalidation: wife or husband, other persons whose rights have been broken by the registration of such marriage, parents, custodian of the child, custodian of an incapable person, prosecutor, Custody and Care Authority if protection is needed for rights and interests of the child of the person found incapable or of the person with limited capacity.


Article 43. Invalidation of a Marriage after its Termination

 1. Dissolution of a marriage, death of the wife or the husband do not create any obstacle for marriage invalidation.

 2. If the marriage was dissolved judicially, legal action for its invalidation may be taken only after the judgment on marriage dissolution has been reversed.


Article 44. Time from which a Marriage Becomes Invalid

1. In cases set forth in Articles 39 – 41 of the present Code, a marriage becomes invalid the date of its public registration.


Article 45. Legal Consequences of Matrimonium Nullum

1. Invalid marriage (Article 39 of the present Code), as well as a marriage found invalid judicially do not constitute any ground for the persons between whom it has been registered to assume spouses' rights and responsibilities , as well as rights and responsibilities established for spouses by other laws of Ukraine.

2. If the persons acquired some property when being in invalid marriage, such a property is considered to be their jointly shared property.  The amount of share of each of them is determined based on the extent of their contribution to acquiring such property with their work and resources.

3. Whenever a person received maintenance from the one he/she has jointed in invalid marriage, the sum of maintenance paid is deemed to have been received without sufficient legal ground and as such is to be repaid in accordance with the Civil Code of Ukraine (1540-06) but not more than for the last three years.

4. A person that has housed in the living space of another person in connection with registering an invalid marriage with the latter does not acquire the right to reside therein and may be moved out.

5. A person that has changed his/her family name in connection with registering an invalid marriage is considered to bear that family name without sufficient legal ground.

6. Legal consequences set forth in paragraphs 2 – 5 of the present Article apply to the person that has been aware of obstacles to marriage registration but concealed them from the other party and/or from the public civil status act registration authority.

Article 46. Particular Legal Consequences of Matrimonium Nullum

 1. If a person did not know and could not know about the obstacles to marriage registration, he/she has the right to:

 1) partition of property acquired in the invalid marriage as joint matrimonial property;

 2) live in the living space he/she has moved in, in connection with invalid marriage;

 3) maintenance in accordance with Articles 75, 84, 86 and 88 of the present Code;

 4) family name he/she chose when registering the marriage.

Article 47. Rights and Responsibilities of Parents and a Child Born in Invalid Marriage

1. Matrimonium nullum has no impact on the extent of mutual rights and responsibilities of the parents and the child born in such a marriage.

Article 48. Finding a Marriage as Non-Agreement ed

1. A marriage registered in the absence of the bride and/or the fiance is considered to be non-agreement ed. The record of such marriage in the public civil status act

14

registration authority is cancelled upon judicial decision rendered on the request of the person concerned, as well as on the request of the prosecutor.

**Chapter 6** PERSONAL NON-PROPERTY RIGHTS AND RESPONSIBILITIES OF SPOUSES

Article 49. Right to Motherhood

1. The wife has the right to motherhood.

2. Husband's reluctance to have a child or his inability to procreate a child may be a ground for marriage dissolution.

3. Depriving a woman of the possibility to give birth to a child (reproduction function) in connection with her discharging constitutional, official and labor duties or as a result of any unlawful behavior against her constitutes a ground for repairing moral damage inflicted thereon.

4. Conditions for preserving health of the pregnant wife and for delivering a healthy child should be created in the family.

5. Conditions allowing the wife-mother to combine the motherhood with her exercising other rights and discharging other responsibilities should be created in the family.

Article 50. Right to Fatherhood

1. The husband has the right to fatherhood.

2. Refusal of the wife to give birth to a child or her inability to give birth to a child may be a ground for marriage dissolution.

3. Depriving a man of the possibility to perform his reproductive function in connection with his discharging constitutional, official and labor duties or as a result of any unlawful behavior against him constitutes a ground for repairing moral damage inflicted thereon.

Article 51. Right of the Wife and the Husband to Respect for their Identity

1. The wife and the husband have equal right to respect for their identity, habits and preferences.

Article 52. Right of the Wife and the Husband to Physical and Spiritual Development

1. The wife and the husband have equal right to physical and spiritual development, education, expression of their abilities, creation of conditions for work and recreation.

Article 53. Right of the Wife and the Husband to Change their Family Names

1. Whenever, during marriage registration, the wife and the husband retain their pre-marriage family names, they still have the right to apply to the public civil status act registration authority, which has registered their marriage, or to the relevant competent authority in the place of their residence, for selecting family name of one of them as the joint family name or for adding the family name of the other spouse to his/her family name.

2. Should the family name be changed, the public civil status act registration authority issues a new Certificate of Marriage.

Article 54. Right of the Wife and the Husband to the Assignment of Responsibilities and Joint Solution of Family Matters

1. The wife and the husband have the right to assign between them family responsibilities.  The wife and the husband should promote respect for any work done in the best interest of the family.

2. The spouses have to decide all the most important family matters jointly, at equal footing. The wife and the husband have the right to object to suspending them from the solution of family matters.

3. It is understood that actions one of spouses takes in respect of family matters have been done upon consent of the other spouse.

Article 55. Spouses Duty to Care about the Family

1. The wife and the husband should jointly care about developing family relations between themselves and with other family members at the basis of mutual love, respect, friendship and mutual assistance.

2. The husband should promote respect for the mother in the family.  The wife should promote respect for the father in the family.

3. The wife and the husband are responsible before each other, other family members for their behavior therein.

 4. The wife and the husband shall have the duty to jointly care about maintaining the family financially.

Article 56. Right of the Wife and the Husband to Personal Liberty

1. The wife and the husband have the right to freely choose place of their residence.

2. The wife and the husband have the right to take measures with regard to maintaining marriage relationships, such measures not being prohibited by law and not being contrary to morals of the society.

3. One of spouses has the right to terminate marriage relationships.

16

4. Forced termination of marriage relationships, forcibly preserving them, including forcing to sexual relations through physical or mental violence, violate the wife and the husband's right to personas liberty and may entail consequences provided for by law.

**Chapter 7** RIGHT OF THE WIFE AND THE HUSBAND  TO PERSONAL PRIVATE PROPERTY

Article 57. Personal Private Property of the Wife and the Husband

1. The wife, the husband possesses the following personal private property:

1) property he/she acquired prior to the marriage;

 2) property he/she acquired in the marriage but at the basis of a deed of gift or succession;

3) property he/she acquired in the marriage but for his/her personal money.

2. Personal private property of the wife and the husband includes articles for personal use, inclusive of valuables even if they have been acquired for joint money of spouses.

3. Personal private property of the wife and the husband includes prizes, bonuses that he/she has received for personal merits.  The court may recognize the right of the other of spouses to a share of such a prize if it would be ascertained that he/she has contributed with his/her efforts (keeping household, bringing up children, etc.) to obtaining this prize.

4. Personal private property of the wife and the husband includes money received in reparation of a lost (damaged) good, which belonged to him/her, as well as in reparation of the damage inflicted thereon.

5. Personal private property of the wife and the husband includes insurance indemnities paid to him/her in the framework of compulsory or voluntary personal insurance.

6. The court may found that property acquired by the wife, the husband during the period of separation as a result of actual termination of marriage relationships belongs to personal private property of the wife, the husband.

7. If the money for which the property has been acquired, in addition to joint resources, includes money of one of spouses, the share in this property, proportional to his/her contribution, belongs to his/her personal private property.

Article 58. Right to Fruits of, and Incomes from, Goods Belonging to Personal Private Property of the Wife, the Husband

17

1. If a good belonging to one of spouses bears fruits, breeds or generates an income (dividends), this spouse is the owner of such fruits, gets or income (dividends).

Article 59. Exercising the Right to Personal Private Property by the Wife, the Husband

1. The spouse – owner of the property defines the way in which his/her property should be possessed and disposed of, subject to the interests of the family, and primarily the interests of the children.

2. When administering his/her property, the wife, the husband should take into account the interests of the child, other family members that, in accordance with law, have the right to dispose of such property.

**Chapter 8** RIGHT OF SPOUSES TO JOINT MATRIMONIAL PROPERTY

Article 60. Grounds for the Spouses to Acquire the Right to Joint Matrimonial Property

1. Property acquired by spouses during the marriage is their joint matrimonial property irrespective of that one of them had no earnings (incomes) for valid reasons (training, keeping household, caring children, illness, etc.).

2. It is understood that every good acquired in marriage, save articles for personal use, is the object of spouses' right to joint matrimonial property.

Article 61. Objects of the Right to Joint Matrimonial Property

1. Any goods, except those excluded from civil circulation, may be objects of spouses' right to joint matrimonial property.

2. The wage, retirement benefit, fellowship, other earnings received by one of spouses and contributed to the family budget or deposited to his/her personal account in a banking (lending) institution constitute the object of spouses' right to joint matrimonial property.

3. If one of spouses enters into an agreement for the sake of family, money, other property, including honorarium, prize that has been obtained under this agreement are the object of spouses' right to joint matrimonial property.

4. Goods intended for professional occupation (musical instruments, office equipment, medical equipment, etc.) that were acquired during marriage for one of the spouses are the object of spouses' right to joint matrimonial property.

Article 62. Joint Matrimonial Property Right of Spouses to Property that Belonged to the Wife, the Husband

18

1. Whenever, during the marriage, the value of the wife's, husband's property substantially increased as a result of joint labor and financial efforts or efforts made by the other spouse, such property, if contested, may be found judicially to be the object of spouses' right to joint matrimonial property.

Article 63. Exercising the Right to Joint Matrimonial Property by Spouses
1. The wife and the husband have equal rights to possess, dispose of, and administer the property that they possess as joint matrimonial property unless an agreement between them provides otherwise.

Article 64. Spouses' Right to Conclude Agreement s between Them

1. The wife and the husband have the right to conclude any lawful agreement between them in respect of both property that is their personal private property and property that constitutes the object of spouses' right to joint matrimonial property.

2. A agreement of alienation, by one of spouses in favor of the other, of his/her share in spouses' right to joint matrimonial property may be concluded without separating that share.

Article 65. Spouses' Right to Administer the Property that is the Object of Spouses' Right to Joint Matrimonial Property

1. The wife and the husband administer the property that is the object of spouses' right to joint matrimonial property upon mutual agreement.

2. When one of spouses concludes an agreement, it is understood that he/she acts upon consent of the other of spouses. The wife, the husband may take legal action for invalidation of an agreement as the one that has been entered into by the other of spouses without his/her consent if such a agreement goes beyond the limits of a minor household agreement .

3. For one of the spouses to conclude agreement s, which require certification by a notary and/or public registration, as well as agreement s with regard to valuable property, consent of the other of spouses should be expressed in written.  Consent to concluding a agreement, which require certification by a notary and/or public registration has to be certified by a notary.

4. A agreement concluded by one of the spouses in the interests of the family entails obligations for the other of spouses if the property received under such a agreement is used for the benefit of the family.

Article 66. Spouses' Right to Define the Way in which the Property Should Be Used

1. The spouses may reach an agreement on the way in which the property belonging them as joint matrimonial property should be used.

2. A agreement on the way in which the house, apartment, another building or structure, land lot should be used if it is certified by a notary places obligation on the wife's and husband's legal successor.

Article 67. Right to Administer a Share in the Property that Is the Object of Spouses' Right to Joint Matrimonial Property
1. The wife, the husband has the right to conclude with another person a agreement of purchase/sale, exchange, gift, life maintenance (care), mortgage in respect of his/her share in spouses' joint matrimonial property only after defining and separating in kind that share or establishing the manner in which the property should be used.

2. The wife, the husband has the right to draw up a will for his/her share in spouses' joint matrimonial property prior to its definition and separation in kind.

Article 68. Exercising the Right to Joint Matrimonial Property after Dissolution of Marriage

1. Marriage dissolution does not terminate the right to joint matrimonial property acquired in the marriage.

2. Property that is the object of the right of joint matrimonial property, after marriage dissolution is administered by co-owners exclusively upon mutual consent and in accordance with the Civil Code of Ukraine (1540-06).

Article 69. Spouses' Right to Partition of Property that Is the Object of Spouses' Right to Joint Matrimonial Property

1. The wife and the husband have the right to partition of joint matrimonial property irrespective of marriage dissolution.

2. The wife and the husband have the right to partition of property upon mutual consent. Agreement of partition of the house, apartment, other real estate, as well as agreement of separation of real estate from all property in favor of the wife, the husband has to be certified by a notary.

Article 70. Amount of the Wife's and the Husband's Property Shares in the Property that Is the Object of Spouses' Right to Joint Matrimonial Property

1. In case of partition of the property that is the object of spouses' right to joint matrimonial property, the wife's and the husband's shares are equal unless the agreement between them or marriage contract provides otherwise.

2. When considering the dispute with regard to property partition, the court, under the essential circumstances, may derogate from the principles of spouses' shares equality, in particular, if one of the spouses did not care about financial maintenance of the family, concealed, destroyed or damaged the joint property, spent it in the way incompatible with family interests.

3. Upon judicial decision, the wife's, husband's share may be increased if he/she is living together with children and adult son unable to work, daughter, on the condition that the amount of maintenance they receive appears to be insufficient to ensure their physical and spiritual development, as well as medical treatment.

Article 71. Ways in which the Partition of the Property that Is the Object of Spouses' Right to Joint Matrimonial Property is Made

1. The partition of property that is the object of spouses' right to joint matrimonial property is made in kind.  Whenever the wife and the husband have not reached an agreement on the partition of the property, the dispute may be solved by the court. In so doing, the court takes into consideration the interests of the wife, husband and children, as well as other essential circumstances.

2. Goods that can not be parted are awarded to one of the spouses unless the agreement between them provides otherwise.

3. Goods intended for professional occupation are awarded to the spouse that used them in his/her professional activities. The cost of these goods is taken into account in awarding other property to the other of spouses.

4. Financial compensation to one of the spouses instead of his/her share in spouses' right to joint matrimonial property, in particular, to the house, apartment, land lot is allowed only upon his/her consent, save as prescribed in the Civil Code of Ukraine (1540-06).

5. Financial compensation to one of the spouses is possible on the condition that the other of spouses has previously put the appropriate sum of money at court's deposit account.

Article 72. Applying Statute of Limitations to Partition of the Property that Is the Object of Spouses' Right to Joint Matrimonial Property

1. Statute of limitations is not applied to the partition of property that is the object of spouses' right to joint matrimonial property if the marriage has not been dissolved.

2. Statute of limitations in respect of the property partition claim submitted after the marriage has been dissolved makes up three years.  Statute of limitations is calculated starting from the date on which one of the co-owners has become aware or could become aware of the violation of his/her property right.

Article 73. Levying Execution upon the Property that Is the Object of Spouses' Right to Joint Matrimonial Property

1. In respect of liabilities of one of spouses, an execution may be levied only upon his/her personal property and upon his/her separated in kind share in spouses' right to joint matrimonial property.

2. An execution may be levied upon the property, which constitutes spouses' joint matrimonial property if the court ascertains that the agreement has been concluded by one of spouses in the family's interests and that benefit obtained under this agreement has been used for family's needs.

3. When repairing damage made as a result of the crime committed by one of spouses, an execution may be levied upon the property acquired in marriage if judicial decision ascertains that this property has been acquired for proceeds of crime.

Article 74. Property Right of a Woman and a Man Living Together as an Unmarried Couple

1. Whenever a woman and a man live together as an unmarried couple, the property they acquired during the period of living together belongs to them as a joint matrimonial property unless a written agreement between them provides otherwise.

2. Provisions of Chapter 8 of the present Code apply to the property that is the object of the right of a woman and a man living together as an unmarried couple to joint property.

**Chapter 9** SPOUSES' MAINTENANCE RIGHTS AND RESPONSIBILITIES

Article 75. Right of One of Spouses to Maintenance

1. The wife, the husband should materially support each other.

2. The right to maintenance (maintenance) belongs to the spouse that is unable to work, in need of financial support, as long as that the other spouse can provide material support.

3. One of spouse that has attained retirement age as prescribed by law or is a disabled person of the 1st, 2nd or 3rd degree is considered to be unable to work.

4. One of spouses is deemed to be in need of material support if his/her wage, earnings obtained from the use of his/her property and other incomes are insufficient to match minimum subsistence level as established by law.

5. Is deprived of the right to maintenance one of spouses that manifested dishonest conduct in marriage relationships and that became unable to work as result of his/her committing an intentional crime if this has been ascertained judicially.

6. One of spouses that became unable to work as a result of an unlawful conduct on the part of the other spouse is entitled to maintenance whatever right to reparation is set forth in the Civil Code of Ukraine (1540-06).

Article 76. Right to Maintenance after Marriage Dissolution

1. Marriage dissolution does not terminate the right to maintenance of a person, which arose during marriage.

22

2. A person has the right to maintenance after marriage dissolution if he/she became unable to work before marriage dissolution or within one year after the date the marriage has been dissolved and if he/she needs material support and if the former husband, the former wife is able to provide such material support. A person is entitled to maintenance if he/she became unable to work after one year from the date of marriage dissolution has elapsed as long as his/her disability resulted from unlawful behavior the former husband, the former wife manifested in his/her respect in marriage.

 3. If upon marriage dissolution the wife, the husband has not more than five years to attain the retirement age prescribed by law, he/she has the right to maintenance after having reached that age if they lived together in marriage at least ten years.

4. Whenever one of spouses was unable to obtain an education, be employed or hold an appropriate position because of brining up a child, keeping household, caring about family members, being ill or owing to any other circumstances whatsoever, he/she is entitled to a maintenance in connection with marriage dissolution even if he/she is employable, on condition that he/she needs material support and that the former husband, the former wife is able to provide such material support.
In such a case, duration of the right to maintenance makes up three years after the date of marriage dissolution.


Article 77. Ways in which the Maintenance is Provided to One of Spouse

1. The maintenance is provided to one of spouses by the other spouse in kind or cash form upon their consent.

2. Upon court's decision, the maintenance is awarded to one of spouses, as a rule, in cash form.

3. The maintenance is paid on a monthly basis. Upon mutual consent, the maintenance may be paid in advance.

4. Whenever maintenance payer leaves for permanent residence in a State with which Ukraine has not signed the agreement on legal assistance, the maintenance may be paid in advance for the period agreed between spouses and in case of dispute – upon judicial decision.


Article 78. Spouses' Agreement of Maintenance

1. The spouses have the right to conclude a agreement of maintenance provision to one of them, such a agreement laying down conditions, amount and time-limits for paying maintenance. The agreement is drawn up in written and should be certified by a notary.

2. If one of spouses is in default, the maintenance may be levied based on the notarial special execution.


Article 79. Period during which the Maintenance is Paid to One of Spouses

1. The maintenance is awarded upon court's decision from the date on which the legal action has been taken.

2. If the applicant took measures in respect of receiving the maintenance from the defendant but was unable to receive it because of the defendant's default, the court, dependently of the circumstances of the case, may render a judgment on levying the maintenance for the past period but not more than for one year.

3. Whenever one of spouses receives disability maintenance, such maintenance is paid throughout the whole period of disability. In case of submitting the document on the extension of disability period, the maintenance continues to be levied during this period without additional judicial decision thereon.


Article 80. Defining the Amount of Maintenance to be Paid to One of Spouses upon Court's Decision

1. The maintenance is awarded to one of spouses as a portion of the wage (earnings) of the other spouse and/or as fixed cash sum.

2. The court fixes the amount of maintenance to be paid to one of spouses taking account of the possibility to obtain maintenance from adult daughter, son and parents, and based on other essential circumstances.

3. Maintenance amount as fixed by the court may be changed judicially at a latter date upon the application of the maintenance payer or maintenance payee should their financial and/or family situation be changed.


Article 81. Types of Earnings, which are Taken into Account when Fixing Maintenance Amount

1. The list of types of earnings, which are taken into account when fixing the amount of maintenance to be paid to one of spouses, children, parents and other persons is approved by the Cabinet of Ministers of Ukraine.


Article 82. Termination of Maintenance Right of One of Spouses

1. The right to maintenance of one of spouses, as well as the right to maintenance to which a person is entitled after the marriage dissolution terminate if he/she has re-established his/her ability to work, as well as registered a new marriage.
The right to maintenance terminates as from the date on which these circumstances have occurred.

2. Whenever, after the right to maintenance has terminated, court's decision on levying maintenance continues to be executed, all of sums received as maintenance are deemed to be obtained without sufficient legal ground and are subject to full repayment but not more than for three years.

3. The right of one of spouses to maintenance awarded by court may be terminated judicially if it is ascertained that:

1) maintenance payee no longer needs material support;

2) maintenance payer is unable to provide material support.

4. The right of one of spouses to maintenance terminates in cases set forth in Articles 83, 85, 87 and 89 of the present Code.


Article 83. Deprivation of Right to Maintenance or its Limitation in Time
1. The court may deprive one of spouses of the right to maintenance or limit this right in time if:

1) spouses maintained marriage relationships not so long;
2) inability to work of the spouse that needs material support occurred as a result of his/her committing an intentional crime;
3) inability to work or serious illness of the spouse that needs material support was concealed from the other spouse at marriage registration;
4) maintenance payee has knowingly put himself/herself in the situation of the person that needs material support.

2. Provisions of the present Article apply to those whose right to maintenance arouse after the marriage dissolution.


Article 84. Wife's Right to Maintenance during the Pregnancy and the Child's Living with Her

1. The wife has the right to her husband's maintenance during pregnancy.

2. The wife living with her child is entitled to maintenance from her husband – father of the child till the child attains the age of 3.

3. Whenever the child has physical or mental handicaps, the wife living with the child has the right to the husband's maintenance till the child attains the age of 10.

4. The pregnant wife, as well as the wife living with the child has the right to maintenance irrespectively of whether she is employed or not and whatever her financial situation is, as long as the husband is able to provide material support.

5. The maintenance awarded to the wife during her pregnancy is paid after the delivery of the child without any additional court's decision.

6. The pregnant wife, as well as the wife living with the child has the right to maintenance in case of marriage dissolution.


Article 85. Termination of the Wife's Right to Maintenance

1. The right of the wife to maintenance laid down in Article 84 of the present Code terminates in case of aborting the baby, delivering a dead child or if the child was given to another person for care, as well as in case of the child's death.

2. The right of the wife to maintenance is terminated whenever particulars on the husband as the father have been withdrawn from the birth record upon court's decision.

Article 86. Husband's Right to Maintenance if the Child Lives With Him

1. The husband with whom the child lives is entitled to maintenance from his wife – mother of the child till the child attains the age of 3.

2. Whenever the child has physical or mental handicaps, the husband with whom the child lives has the right to the wife's maintenance till the child attains the age of 10.

3. The husband with whom the child lives has the right to maintenance irrespectively of whether he is employed or not and whatever his financial situation is, as long as the wife is able to provide material support.

5. The husband with whom the child lives has the right to maintenance after the marriage has been dissolved.

Article 87. Termination of the Husband's Right to Maintenance

1. The right of the husband to maintenance laid down in Article 86 of the present Code terminates if the child was given to another person for care, as well as in case of the child's death.

2. The right of the husband to maintenance is terminated whenever particulars on the wife as the mother have been withdrawn from the birth record upon court's decision.

Article 88. Right to Maintenance of the Spouse with Whom the Disabled Child Lives

1. If one of spouses, including the spouse able to work, lives together with the disabled child that does not need a permanent external help, and cares about the child, he/she is entitled to maintenance as long as the other spouse is able to provide material support. The right to maintenance is effective throughout the whole period of living with the disabled child and caring about him/her and it does not depend upon financial situation of the parent with whom the child lives.

2. The amount of maintenance to be paid to the spouse with whom the disabled child lives is fixed by judicial decision in accordance with Article 80, paragraph 1, of the present Code without taking into account the possibility of receiving maintenance from his/her parents, daughter or son of full age.

Article 89. Termination of Maintenance Right upon Agreement between Spouses

1. The spouses, as well as persons whose marriage has been dissolved may conclude an agreement for maintenance right termination in exchange of acquiring the property right to a house, apartment or any other real estate or in exchange of receiving a lump-

26

sum cash payment.  The agreement, which transfers the ownership to a real estate should be certified by a notary and is subject to public registration.

2. Whenever the persons concerned reached an agreement on maintenance right termination in connection with receiving a lump-sum cash payment, the agreed cash amount has to be put at the deposit account of the notarial office concerned before the certification of the agreement.

3. The execution may not be levied upon the property obtained under the agreement of maintenance right termination.

Article 90. Mutual Involvement of the Wife, the Husband in Covering Medical Treatment Expenses

1. The wife, the husband shall have the duty to share expenses incurred in connection with an illness or injury of one of spouses.

Article 91. Right to Maintenance of the Woman and the Man that Live As an Unmarried Couple

1. If an unmarried woman and a man have lived together for a long time, the one of them that became unable to work during their jointly living has the right to maintenance under Article 76 of the present Code.

2. A woman and a man that live as an unmarried couple are entitled to maintenance if his/her child lives together with him/her, in accordance with Article 84, paragraphs 2 – 4, and Articles 86 and 88 of the present Code.

3. Maintenance right of a woman and a man terminates on the grounds set forth in Article 83, paragraphs 2 and 4, as well as Articles 85, 87 and 89 of the present Code.

### Chapter 10 MARRIAGE CONTRACT

Article 92. Right to Conclude a Marriage Contract

1. Persons that have filed an application for marriage registration, as well as a married couple may conclude a marriage contract.

 2. Whenever a party to the marriage has not attained the full age, a written consent of his/her parents or caretaker, certified by a notary is needed for the marriage contract to be concluded before marriage registration.

Article 93. Marriage Contract Contents

1. A marriage contract governs property relations between spouses and defines their property rights and duties.

2. A marriage contract may define property rights and duties of spouses as parents.

3. A marriage contract may not govern personal relations of spouses, as well as personal relations between them and children.

4. A marriage contract may not narrow the scope of the child's rights established by the present Code and it may not put one of spouses in extremely disadvantageous material situation.

5. Real estate and other property whose ownership is subject to public registration may not be transferred to one of spouses in ownership under a marriage contract.

Article 94. Marriage Contract Form

1. A marriage contract should be concluded in written and certified by a notary.

Article 95. Time from which a Marriage Contract Takes Effect

1. Whenever a marriage contract is concluded before marriage registration, it takes effect the day on which the marriage has been registered.

2. Whenever a marriage contract is concluded by spouses, it takes effect the day on which it has been certified by a notary.

Article 96. Time throughout which a Marriage Contract is in Effect

1. A marriage contract may specify the whole period throughout which the marriage contract is effective, as well as time-limits for specific rights and duties.

2. A marriage contract may specify that the agreement or some of its provisions are effective after the end of the marriage.

Article 97. Specifying Property Legal Status in a Marriage Contract

1. A marriage contract may specify the property, which the wife, the husband transfer for the use in the interests of the common family needs, as well as the legal status of the property, which has been gifted to spouses on the occasion of marriage registration.

2. The parties may agree that Article 60 of the present Code does not apply to the property acquired by the spouses in marriage and that such a property is their jointly shared property or personal private property of one of spouses.

3. The parties may agree on the eventual manner of property partition, including in case of marriage dissolution.

4. The parties may provide for in the marriage contract the use of the property belonging to both of them or one of them for meeting the needs of their children and others.

5. The parties may include in the marriage contract other provisions related to property legal status unless the latter are contrary to morals of the society.

## Article 98. Specifying the Manner in which Housing should be Used in a Marriage Contract

1. Whenever one of spouses, in connection with the marriage, moves in the living space of the other spouse, the parties may agree, in the marriage contract, on the manner, in which such housing should be used. The spouses may agree that the spouse that has moved in the living space should move out in case of marriage dissolution, with cash reparation or without it.
2. The parties may agree on living in the living space, which belongs to one of them or is joint matrimonial property of them, their relatives.

## Article 99. Specifying Maintenance Right in a Marriage Contract

1. The parties may agree on providing maintenance to one of spouses irrespectively of his/her ability to work and need in material support, on conditions set forth in the marriage contract.

2. Whenever the marriage contract sets forth conditions, amount and time of maintenance payment, if one of spouses is in default, the maintenance may be levied based on the notarial special execution.

3. A marriage contract may provide for the possibility of the termination of one of spouses' maintenance right in connection with his/her receiving property (cash) reparation.

## Article 100. Amending Marriage Contract

1. Unilateral amendments to a marriage contract are not allowed.

2. A marriage contract may be amended by the spouses. Amending agreement to a marriage contract shall be certified by a notary.

3. Upon request of one of spouses, the marriage contract may be amended judicially if his/her essential interests, the interests of children and adult daughter, son unable to work so require.

## Article 101. Right to Refuse a Marriage Contract

1. The spouses have the right to denounce their marriage contract.  Rights and duties laid down in the marriage contract terminate the day on which an application for denouncing the marriage contract has been lodged with the notary.

## Article 102. Annulment of a Marriage Contract

1. Upon request of one of spouses, a marriage contract may be annulled judicially on the essential grounds, in particular in case of impossibility to fulfill it.


Article 103. Founding a Marriage Contract Invalid

1. Upon request of one of spouses or any other person whose rights and interests have been infringed on by such an agreement, a marriage contract may be found invalid judicially on the grounds set forth in the Civil Code of Ukraine (1540-06).



**Chapter 11** TERMINATION OF A MARRIAGE


Article 104. Grounds for Marriage Termination

1. A marriage is terminated in case if one of spouses dies or is found died.

2. A marriage is terminated because of its dissolution.

3. Whenever one of spouses dies prior to judicial decision on marriage dissolution becoming res judicata, it is understood that the marriage has terminated as a result of his/her death.

4. If one of spouses dies the day on which judicial decision on marriage dissolution has become res judicata, it is understood that the marriage has terminated as a result of its dissolution.


Article 105. Termination of a Marriage as a Result of its Dissolution

1. A marriage is terminated because of its dissolution upon joint application of spouses or of one of them on the ground of the decision made by the public civil status act registration authority, in accordance with Articles 106 and 107 of the present Code.

2. A marriage is terminated because of its dissolution upon joint application of spouses on the ground of judicial decision, in accordance with Article 109 of the present Code.

3. A marriage is terminated because of its dissolution upon legal action by one of spouses on the ground of judicial decision, in accordance with Article 110 of the present Code.


Article 106. Marriage Dissolution by the Public Civil Status Act Registration Authority upon Application of Spouses that Don't Have Children

 1. The spouses without children have the right to lodge a marriage dissolution application with the public civil status act registration authority.

2. The public civil status act registration authority makes a decision on marriage dissolution after one month has elapsed from the day on which such an application has been lodged unless it was withdrawn.

3. The marriage is dissolved whatever property dispute between the spouses may exist.

Article 107. Marriage Dissolution by the Public Civil Status Act Registration Authority upon Application of One of Spouses

1. The public civil status act registration authority dissolves the marriage upon application lodged by one of spouses if the other of spouses:

　　1)  has been found missing,
　　2)  has been found legally incapable,
　3) has been sentenced to at least three years of jail for committing a crime.

2. The marriage is dissolved whatever property dispute between the spouses may exist.

Article 108. Founding a Marriage Dissolution Fictitious

1. Upon application of the person concerned, marriage dissolution effected in accordance with Article 106 and Article 107, paragraph 1, subparagraph 3, of the present Code may be found judicially fictitious if it is ascertained that the woman and the man continued living together and did not have any intention to terminate their marriage relationships.  Based on judicial decision, the marriage dissolution record and the Certificate of Marriage Dissolution shall be annulled by the public civil status act registration authority.

Article 109. Annulment of the Marriage upon Joint Application of Spouses Having Children

1. The spouses having children may file with the court a marriage dissolution application accompanied with written agreement, which specifies with whom of them children will be living, what kind of contribution the parent living without children will make in ensuring their living conditions, as well as conditions for him/her to exercise the right for children's personal education.

2. Spouses' agreement on the amount of maintenance to be paid to the child is subject to notary certification. If this agreement is disregarded, maintenance may be levied based on the notarial special execution.

3. The court makes a decision on marriage dissolution if it has been ascertained that the marriage dissolution application corresponds to the will of the wife and the husband and that marriage dissolution does not violate their personal and property rights, as well rights of their children.

4. The court makes a decision on marriage dissolution after one month has elapsed from the day on which such an application has been lodged. The wife and the husband may withdraw their marriage dissolution application before the expiry of this time-limit.

Article 110. Right to Take a Legal Action for Marriage Dissolution

1. One of spouses has the right to legal action for marriage dissolution.

2. The legal action for marriage dissolution may not be taken during the wife's pregnancy and within one year after the child has been born, save cases when one of spouses has committed unlawful conduct containing elements of crime in respect of the other spouse or the child.

3. The husband, the wife has the right to take legal action for marriage dissolution during the wife's pregnancy if another person found parental affiliation of the procreated child.

4. The husband, the wife has the right to take legal action for marriage dissolution prior the child has attained the age of 1 if another person found parental affiliation of the child or if upon judicial decision particulars on the husband as the father of the child have been withdrawn from the birth record.

5. The custodian may take legal action for marriage dissolution if the interests of the spouse found legally incapable so require.


Article 111. Judicial Actions to Reconcile Spouses

1. The court takes necessary actions to reconcile spouses unless this is contrary to morals of the society.


Article 112. Grounds for Marriage Dissolution upon Legal Action Taken by One of Spouses

1. The court ascertains actual relationships of spouses, real reasons for taking legal action for marriage dissolution, take in consideration existence of a minor child, disabled child and other circumstances relating to the life of married couple.

2. The court pronounces the decision on marriage dissolution if it is ascertained that spouses' continued living together and preservation of marriage would not be in essential interests of one of spouses, the interests of their children.


Article 113. Right to Choose Family Name after Marriage Dissolution

1. The person that has changed his/her family name in connection with marriage registration may continue to bear that family name or revert to his/her pre-marriage family name.


Article 114. Time from which a Marriage Terminates in case of its Dissolution

1. Whenever the public civil status act registration authority dissolves a marriage, the marriage terminates the day on which such an authority has made the appropriate decision.

2. When the court dissolves a marriage, the marriage terminates the day on which judicial decision on marriage dissolution has become res judicata.

Article 115. Marriage Dissolution Registration

1. A marriage dissolved judicially is subject to the registration in the public civil status act registration authority upon application of the former wife or husband.

2. Marriage dissolution is attested by the Marriage Dissolution Certificate whose specimen is approved by the Cabinet of Ministers of Ukraine.

Article 116. Right to Remarry after Marriage Dissolution

1. After the marriage has been dissolved and the Marriage Dissolution Certificate received, the person has the right to remarry.

Article 117. Right to Marriage Resumption after its Dissolution

1. The woman and the man whose marriage has been dissolved have the right to apply to the court for marriage resumption provided that neither of them has remarried after their marriage dissolution.

2. Based on the judicial decision on marriage resumption, and annulment of the marriage dissolution record, the public civil status act registration authority issues a new Certificate of Marriage where, upon the spouses' choice, the day of marriage registration may be the day of their first marriage registration or the day on which judicial decision on marriage resumption has become res judicata.

Article 118. Marriage Resumption in Case of Reappearance of the Person Found Dead or Missing

1. If a person found dead reappears and if the relevant judicial decision is set aside, his/her marriage with another person is resumed provided that neither of them has remarried.

2. If a person found missing reappears and if the relevant judicial decision is set aside, his/her marriage with another person may be resumed upon their application provided that neither of them has remarried.

3. In cases provided for in paragraphs 1 and 2 of the present Article, the public civil status act registration authority annuls the marriage dissolution record and the relevant certificate issued based on such a record.

Article 119. Establishing the Regime of Separation

1. Upon spouses' application or the application of one of spouses, the court may pronounce a decision on the separation if the wife and/or the husband cannot or does not want to live together.

2. Separation regime terminates if family relations are resumed or if the court takes relevant decision upon application of one of spouses.


Article 120. Legal Consequences of Establishing the Regime of Separation

1. Establishing the regime of separation does not terminate spouses' rights and responsibilities laid down in the present Code and rights and responsibilities the wife and the husband had prior to the establishment of such a regime, as well as those provided for in the marriage contract.

2. Should the separation regime be established:

1) property subsequently acquired by the wife and the husband is not deemed to be the property acquired in the marriage;

 2) a child born by the wife after ten months have elapsed is not deemed to be affiliated to her husband;

3) the wife and the husband may adopt a child without consent of each other.


**Section III RIGHTS AND RESPONSIBILITIES OF THE MOTHER, THE FATHER AND THE CHILD**

**Chapter 12** ESTABLISHMENT OF CHILD'S ORIGINS


Article 121. General Grounds for the Creation of Rights and Responsibilities of the Mother, the Father and the Child

1. Rights and responsibilities of the mother, the father and the child draw upon their affiliation to the child, such affiliation being attested by the public civil status act registration authority in the manner prescribed in Articles 122 and 125 of the present Code.


Article 122. Establishing Maternal and Paternal Affiliation in Case of Married Couples

 1. A child conceived and/or born in marriage is affiliated to the spouses.  The fact that the child is affiliated to the spouses is established based on the Marriage Certificate and the document of the medical institution attesting that the wife has given birth to the child.

2. A child born before ten months has elapsed after the termination of the marriage or its annulment is affiliated to the spouses, except the case provided for in Article 124 of the present Code.

3. The wife and the husband may jointly apply to the public civil status act registration authority for not recognizing the husband as the child's father.  In such a case, the child's origin is established in accordance with Article 135, paragraph 1, of the present Code.

Article 123. Establishing Maternal and Paternal Affiliation in Case of Medically Assisted Procreation and Ovum Implantation

1. If the wife is fertilized by artificial procreation techniques upon written consent of her husband, the latter is registered as the father of the child born by his wife.

2. If an ovum conceived by the spouses is implanted to another woman, the spouses shall be the parents of the child.

3. Whenever an ovum conceived by the husband with another woman is implanted to his wife, the child is cnsidered to be affiliated to the spouses.

Article 124. Establishing Paternal Affiliation in Case of the Child's Mother Remarriage

 1. If a child is born before ten months has elapsed after the termination of the marriage or its annulment but after his/her mother has registered her remarriage with another person, the mother's new husband is deemed to be the husband of the child.  Paternal affiliation of the former husband may be established on the basis of his joint with the new husband application or by judicial decision.

Article 125. Establishing Maternal and Paternal Affiliation in Case of Unmarried Couples

 1. If the child's mother and father are not married to each other, maternal affiliation is established based on the document of the medical institution attesting that the woman has given birth to the child.

2. If the child's mother and father are not married to each other, paternal affiliation is established:

 1) upon application of the mother and the father of the child;
 2) upon application of the man who claims to be the child's father;
 3) upon judicial decision.

Article 126. Establishing Paternal Affiliation upon Application of the Woman and the Man Who are not Married to Each Other

1. Paternal affiliation is established upon application of the woman and the man who are not married to each other. Such an application may be lodge with the public civil status act registration authority both prior and after the child's birth.

 2. Whenever the application for establishing paternal affiliation is lodged by a juvenile, the public civil status act registration authority informs the parents, the custodian, and the caretaker of the juvenile on recording him as the child's farther.

3. If a person is unable to lodge the application for establishing paternal affiliation in person, such an application may be lodged through a representative or sent by mail provided that it has been certified by a notary.


Article 127. Establishing Paternal Affiliation upon Application of the Man Who Claims to Be the Child's Father

1. The man who is not married to the child's mother may lodge with the public civil status act registration authority an application for recognizing him as the father of the child whose mother has died or has been found dead, incapable, missing, deprived of parental rights or if the child's mother does not live with child at least six months and does not take care of the child as his/her mother.  Such an application is accepted on the condition that the record on the father has been entered in the Birth Register in accordance with Article 135, paragraph 1, of the present Code.


Article 128. Establishing Parental Affiliation by Judicial Decision
1. In the absence of applications referred to in Articles 126 and 127 of the present Code, parental affiliation may be established by judicial decision.

 2. Any information attesting parentage of the child and collected in accordance with the Code of Civil Procedure (1501-06, 1502-06, 1503-06, 1504-06 and 1505-06) of Ukraine constitutes the ground for establishing parental affiliation.

3. Legal action for establishing parental affiliation may be taken by the mother, custodian, caretaker of the child, person who maintains and educates the child, as well as the child himself/herself provided that he/she has attained the full age.  A person who claims to be the child's father may take the legal action for establishing parental affiliation.

4. The court gives effect to the legal action for establishing parental affiliation if the record on the father has been entered in the Birth Register in accordance with Article 135, paragraph 1, of the present Code.


Article 129. Contesting Parental Affiliation by the Child's Mother Husband and a Person who Claims to be the Child's Father

1. A person who claims to be the father of the child delivered by the woman who, upon conceiving or delivering the baby, was married to another man may bring a legal action, against her husband if the latter has been registered as the child's father, for establishing his parental affiliation.

 2. The statute of limitations for the parental affiliation claim makes up one year from the day on which the person concerned has learned or could learn about his parental affiliation.


Article 130. Establishing the Fact of Parental Affiliation by Judicial Decision

1. In case of death of the man who was not married to the child's mother, the fact of his parental affiliation may be established by judicial decision.  The court gives effect to the application for establishing the fact of parental affiliation if the record on the father has been entered in the Birth Register in accordance with Article 135, paragraph 1, of the present Code.

2. The application for establishing the fact of parental affiliation may be lodged by persons referred to in Article 128, paragraph 3, of the present Code.

Article 131. Establishing Maternal Affiliation by Judicial Decision

1. A person who claims to be the child's mother may lodge with the court an application for establishing her maternal affiliation if the record on the mother has been entered in accordance with Article 135, paragraph 2, of the present Code.

Article 132. Establishing the Fact of Maternal Affiliation by Judicial Decision

1. In case of death of the woman who claimed to be the child's mother, the fact of her maternal affiliation may be established by judicial decision.  The court gives effect to the application for establishing the fact of maternal affiliation if the record on the mother has been entered in the Birth Register in accordance with Article 135, paragraph 2, of the present Code.

2. The application for establishing the fact of maternal affiliation may be lodged by the father, custodian, caretaker of the child, person who maintains and educates the child, as well as the child himself/herself provided that he/she has attained the full age.

Article 133. Recording the Spouses as the Child's Parents

1. Whenever the spouses give birth to a child, the wife is registered as the mother and the husband as the father of the child.

Article 134. Registering the Establishment of Parental and Maternal Affiliation

1. Based on the application lodged by persons referred to in Articles 126 and 127 of the present Code or on the judicial decision, the public civil status act registration authority enters relevant changes to the Birth Register and issues a new Certificate of Birth.

Article 135. Entering Records on the Child's Parents when Parental, Maternal Affiliation Has not been Established

1. If the unmarried mother gives birth to a child, in the absence of the parents' joint application, the father's application or the judicial decision, the record on the child's father is entered in the Birth Register by the mother's family name while the first name and patronymic are passed on to the child upon the mother's instruction.  Whenever the mother dies or it is impossible to find out her place of residence, the record on the mother and the father of the child is entered in accordance with the present Article upon

application of the relatives, other persons or authorized representative of the health institution where the child was delivered.

2. If the child's parents are unknown, the record on them is entered in the Birth Register upon decision of the Custody and Care Authority.

Article 136. Contesting Parental Affiliation by the Person who Has Been Registered as the Child's Father

1. The person who has been registered as the child's father in accordance with Articles 122, 124, 126 and 127 of the present Code has the right to contest his parental affiliation by taking a legal action to withdraw his name as the child's father from the birth record.

2. If the absence of blood relationship between the person registered as the father and the child is proved, the court makes a decision to withdraw the name of the person as the child's father from the record of birth of this child.

3. Parental affiliation may be contested but after the child has been born and unless the child has attained the full age.

4. In case of the child's death, contesting parental affiliation is not allowed.

5. May not contest parental affiliation the person registered as the child's father if, upon his registering as the child's father, he was fully aware that he was not the father, as well as the person who has given consent to the use of artificial procreation techniques in respect of his wife.

6. The statute of limitations does not apply to a man's claim to withdraw his name as the child's father from the birth record.

Article 137. Contesting Parental Affiliation after the Person Registered as the Child's Father has Died

1. Whenever a person registered as the child's father dies before the child has been born, his successors have the right to contest his parental affiliation provided that, when being alive, he has lodged with a notary the application for not-recognizing his parental affiliation.

2. Whenever a person registered as the child's father dies after he has lodged the application for withdrawing his name as the child's father from the birth record, his successors may maintain the statement of claim in the court.

3. Whenever, for valid reasons, a person was unaware that he had been registered as the child's father and died, his successors (wife, parents and children) may contest his paternal affiliation.

4. The statute of limitations does not apply to a man's claim to withdraw his name as the child's father from the birth record.

Article 138. Child's Mother Right to Contest Parental Affiliation of her Husband

1. A woman who has given birth to a child when being married has the right to contest parental affiliation of her husband.

2. The mother's claim to withdraw her husband's name as the child's father from the birth record may be satisfied only if another person has lodged the application for establishing his parental affiliation.

3. One year statute of limitations is applied to the mother's claim to introduce changes to the birth record, such statute of limitations beginning to run on the day the child birth has been registered.


Article 139. Contesting Maternal Affiliation

1. The woman registered as the child's mother may contest her maternal affiliation.

2. A woman who claims to be the child's mother may bring an action against the woman registered as the child's mother to establish her maternal affiliation. Contesting maternal affiliation is not allowed in cases set forth in Article 123, paragraphs 2 and 3, of the present Code.

3. One year statute of limitations is applied to the claim for establishing maternal affiliation, such statute of limitations starting running on the day when the person has learned or could learn that she was the child's mother.


Article 140. Contesting Paternal, Maternal Affiliation of the Person Paying Maintenance upon Judicial Decision

1. Levying maintenance on the person who is registered as the father, the mother of the child does not constitute an obstacle to taking legal action for withdrawing information on him/her as the father, the mother of the child from the birth record of this child.


**Chapter 13** PERSONAL NON-PROPERTY RIGHTS AND RESPONSIBILITIES OF PARENTS AND CHILDREN


Article 141. Equal Parental Rights and Responsibilities In respect of the Child

1. The mother and the father assume equal rights and responsibilities in respect of the child irrespectively of whether they were married to each other or not.

2. Dissolution of parents' marriage, their living separately from the child does not affect the scope of their rights and does not release them from responsibilities in respect of the child.

Article 142. Equal Children' Rights and Responsibilities In respect of their Parents

1. Children assume equal rights and responsibilities in respect of their parents irrespectively of whether their parents were married to each other or not.

Article 143. Parental Responsibility to Take the Child away from the Maternity Home or any other Health Institution

1. The child's mother and the father married to each other shall have the responsibility to take the child away from the maternity home or any other health institution.

2. The unmarried mother shall the responsibility to take the child away from the maternity home or any other health institution.

3. The parents may abandon the child in the maternity home or any other health institution if the child suffers from serious physical and/or mental handicaps, as well as under other essential circumstances.

4. Whenever the parents did not take the child away from the maternity home or any other health institution, the child's grandmother, grandfather, other relatives may take him/her away upon permission of the Custody and Care Authority.

Article 144. Parent's Responsibility to Register the Child's Birth in the Public Civil Status Act Registration Authority

1. The parents shall register the child's birth in the public civil status act registration authority without delay but not later than one month after the child has been born. Disregard of this responsibility constitutes the ground for them to be brought to responsibility prescribed by law.

2. If the parents die or are unable, for valid reasons, to register the child's birth, such registration is made upon application by relatives, other persons, and authorized representative of the health institution where the child was delivered or where the child stays at the time of registration.

3. The child's birth registration is made by the public civil status act registration authority together with establishing the parentage and passing on to the child the family name, the first name and patronymic.

4. The child's birth is attested by the Certificate of Birth whose specimen is approved by the Cabinet of Ministers of Ukraine.

Article 145. Establishing the Child's Family Name

1. The child's family name is established by the family name of his/her parents.  If family names of the mother and the father are different, the child's family name is established upon their consent.

2. If family names of the mother and the father are different, the parents may pass on to the child double family name by combining their own family names.

3. Any dispute between the father and the mother about the child's family name may be decided by the Custody and Care Authority, or the court.


Article 146. Establishing the Child's First Name

1. The child's first name is established upon consent of the parents.  The first name of the child born by an unmarried woman is established by the child's mother in the absence of voluntary recognition of the parental affiliation.

2. The child may be passed on to not more than two first names unless a custom of the national minority to which the mother and/or the father belongs provides otherwise.

3. Any dispute between the father and the mother about the child's first name may be decided by the Custody and Care Authority, or the court.


Article 147. Establishing the Child's Patronymic

1. The child's patronymic is established by the father's first name.

 2. The patronymic of the child born by an unmarried woman is established by the first name of the person that the mother of the child claimed to be the father unless parental affiliation has been established.


Article 148. Changing the Child's Family Name by the Parents

1. The family name of the child that has not attained the age of 7 is changed if both parents change their family name.

2. The family name of the child that has attained the age of 7 is changed upon his/her consent if both parents change their family name.

3. If one of parents changes his/her family name, the family name of child that has attained the age of 7 may be changed upon his/her consent and upon consent of both parents.

4. Whenever one of parents objects to changing the child's family name, the dispute between the parents may be decided by the Custody and Care Authority, or the court. When considering such a dispute, the extent to which the parents fulfill their responsibilities in respect of the child and other circumstances showing that changing the family name corresponds to the child's interests are taken into account.


Article 150. Parental Responsibilities in respect of the Child's Education and Development

1. The parents shall educate the child in the spirit of respect for the rights and freedoms of the others, love to his/her family and relatives, people and Motherland.

2. The parents shall have the duty to care of the child's health, his/her physical, spiritual and moral development.

3. The parents shall ensure that the child obtains full general secondary education and shall prepare him/her to making his/her own life.

4. The parents shall pay respect for the child.

5. Giving the child to other persons for education does not release the parents from their responsibility to care about him/her.

6. Any exploitation of the child by parents is prohibited.

7. Physical punishment of the child by the parents, aw well as other inhuman or degrading treatment or punishment are prohibited.


Article 151. Parental Rights in respect of the Child's Education

1. The parents enjoy preferential right to personal education of the child.
2. The parents may make other persons involved in the child's education and give the child to physical and legal persons for education.

3. The parents shall have the right to choose forms and methods of the child's education unless they are contrary to law and morals of the society.


Article 152. Ensuring the Child's Right to the Appropriate Parental Education

1. The child's right to the appropriate parental education is secured by the State control system established by law.

2. The child has the right to object to inappropriate discharge by parents of their responsibilities in respect of him/her.

3. The child has the right to approach the Custody and Care Authority, other public authorities, local authorities and public organizations in view of protecting his/her rights and interests.

4. The child has the right to seek a remedy in court to protect his/her rights and interests provided he/she has attained the age of 14.


Article 153. Right of the Parents and the Child to Communicate with Each Other

1. The mother, the father and the child enjoy the right to free communication with each other, in particular if one of them finds himself/herself in an extraordinary situation (hospital, detention center and place of confinement, etc.).

Article 154. Parental Rights in respect of the Protection of their Child

1. The parents have the right to protect themselves their child, daughter and son who have attained the full age.

2. The parents enjoy the right to approach the court, public authorities, local authorities and public organizations in view of protecting rights and interests of their child, as well as the son and daughter who are unable to work, as their legal representatives that do not require having special powers thereto.

3. The parents are entitled to apply for protecting rights and interests of their children in situations when, in accordance with law, they themselves have the right to seek such protection.

Article 155. Exercising Parental Rights and Discharging Parental Responsibilities

1. Exercising parental rights and discharging parental responsibilities shall be based on the respect for the child's rights and his/her human dignity.

2. Parental rights may not be exercised contrary to the interests of the child.

3. Abandonment of the child by parents shall be unlawful and breaks down morals of the society.

4. Avoiding discharging parental responsibilities constitutes the ground for bringing parents to responsibility prescribed by law.

Article 156. Rights and Responsibilities of Parents under the Full Age

1. Parents under the full age assume the same rights and responsibilities as adult parents do and may discharge them at their own.

2. Parents under the full age who have attained the age of 14 have the right to apply to court for protecting their child's rights and interests.

3. Parents under the full age are entitled to legal assistance in the court free of charge.

Article 157. Parents' Deciding Matters Relating to the Education of the Child

1. Matters relating to the child's education are decided by parents jointly.

 2. The parent who does not live with the child shall have the duty to participate in the child's education and has the right to personal communication with the child.

3. The parent living together with the child may not obstruct the parent who does not live with the child in his/her communication with the child and in his/her participation in the

child's education unless such a communication impedes normal development of the child.

4. The parents may conclude an agreement with regard to exercising parental rights and discharging parental responsibilities with the parent who does not live together with the child.  The parent living together with the child if he/she avoids fulfilling the agreement shall repair material and moral damage inflicted on the other parent.

Article 158. Deciding by the Custody and Care Authority a Dispute Related to the Participation of the Parent who Does not Live with the Child in the Child's Education

1. Upon the application of the mother, the Custody and Care Authority prescribes the ways, in which the parent who does not live with the child should participate in the child's education and communicate with the child.  A decision thereon, the Custody and Care Authority makes after having found out the style of parents' life, their attitude towards the child, and other essential circumstances.

2. Decision taken by the Custody and Care Authority is binding. The person that avoids following up the decision made by the Custody and Care Authority shall have the duty to repair material and moral damage inflicted on the parent who does not live with the child.

Article 159. Deciding by the Court a Dispute Related to the Participation of the Parent who Does not Live with the Child in the Child's Education

1. Whenever the parent who lives with the child obstructs the parent who does not live with the child in his/her communicating with the child and educating the child, in particular if he/she avoids following up the decision made by the Custody and Care Authority, the other parent may take a legal action for eliminating such an obstruction.

2. The court prescribes the ways, in which one of parents should participate in the child's education (periodical and systematic access, possibility to rest together, child's coming to the place of residence of the other parent, etc.), the place and the time of their communication, taking into account the age, the state of health of the child, parents' conduct, as well as other essential circumstances.  In some cases, if the interests of the child are at stake, the court may make access to the child conditional on the presence of another person.

3. Upon application of the person concerned, the court may suspend the decision made by the Custody and Care Authority until the dispute is settled.

4. Whenever the person with whom the child lives disregards the court's decision, the court, upon application of the parent who does not live with the child, may give the child to the latter for them to live together.

5. The person that avoids following up the judicial decision shall have the duty to repair material and moral damage inflicted in the parent who does not live with the child.

Article 160. Parental Right to Determine the Child's Place of Residence

1. The place of residence of the child under the age of 10 is determined upon parents' consent.

2. The place of residence of the child that has attained the age of 10 is determined upon parents' consent and consent of the child himself/herself.

3. Whenever the parents live separately, the place of residence of the child that has attained the age of 14 is determined by himself/herself.

Article 161. Dispute between the Mother and the Father about the Place of Residence of a Minor Child

1. If the mother and the father who are separated disagree on with whom of them the minor child will be living, such a dispute may be decided judicially.  When considering the dispute about the place of residence of the child, the court takes into account how parents discharge their parental responsibilities, personal affection of the child towards each of parents, the child's age, state of health and other essential circumstances.

2. The court may not leave the child live with the parent who does not have his/her own earnings, abuses with alcohol and drugs and can hamper the child's development with his/her immoral behavior.

3. If the court has found that neither of parents is able to create adequate conditions for the child's education and development, upon request of the grandmother, grandfather or other relatives involved in the case, the child may be left in charge of somebody of them.
4. As long as the child cannot by given to anyone of these persons, the court, upon request of the Custody and Care Authority, may pronounce the decision to take the child from the person the child lives and give him/her in charge of the Custody and Care Authority.

Article 162. Legal Consequences of the Unlawful Conduct of One of Parents or Any Other Person during Determining the Child's Place of Residence

1. If one of parents or any other person, at his/her own discretion and without consent of the other parent or other persons with whom the minor child has lived in accordance with law or judicial decision, changes the child's place of residence, including by kidnapping, the court, upon legal action of the person concerned, has the right without any delay to render the decision on taking the child back and giving him/her to person with whom the child lived before.  The child may not be taken back only if his/her staying in the previous place of residence creates a real threat to the child's life and health.

2. The person that, on his/her own discretion, has changed the place of residence of the minor child shall have the duty to repair material and moral damage inflicted on the person with whom the child lived together.

Article 163. Parental Right to Take the Child from other Persons

1. The parents enjoy preferential right for their minor child to live with them.

2. The parents have the right to demand separating the minor child from any person who keeps him/her against law or judicial decision.

3. The court may refuse to take the minor child back and give him/her to the parents or one of them if it is ascertained that this is contrary to the child's interest.

Article 164. Grounds for Deprivation of Parental Rights

1. The court may deprive the mother, the father of parental rights if he/she:

 1) has not taken the child away from the maternity home or any other health institution without valid reasons and within six months did not care about the child;

 2) avoids discharging his/her responsibilities to educate the child;

 3) treats the child in a brutal manner;

 4) is a chronic alcoholic or drug addict;

 5) has recourse to the child's exploitation, involves him/her in begging and vagrancy;

 6) has been convicted for committing an intentional crime against the child.

2. The mother, the father may be deprived of the parental rights on the grounds referred to in subparagraphs 2, 4 and 5 of paragraph 1 of the present Article if they have attained the full age.

3. The mother, the father may be deprived of the parental rights in respect of all of their children or some of them.

4. The court shall institute criminal proceedings if, when hearing the case related to the deprivation of parental rights, it founds elements of crime in actions committed by both parents or one of them.

Article 165. Persons that Have the Right to Take Legal Action for the Deprivation of Parental Rights

1. The right to take legal action for the deprivation of parental rights belongs to one of parents, custodian, the caretaker of the child, the person in whose family the child lives, the health institution or the school where the child stays, the Custody and Care Authority, prosecutor, as well as the child himself/herself provided that he/she has attained the age of 14.

Article 166. Legal Consequences of Parental Rights Deprivation

1. The person deprived of the parental rights:

1) loses his/her personal non-property rights in respect of the child and is released from responsibilities to educate the child;

2) terminates being legal representative of the child;

3) loses the rights for benefits given by the State to families with children;

4) may not be an adopter, custodian or caretaker of the child;

5) may not acquire in the future property rights arising from parentage, which he/she could have been entitled to in case of his/her inability to work (right to maintenance from children, right to an old-age benefit and reparation of the damage in case of loss of the breadwinner, succession right);

6) loses other rights arising from the affiliation to the child.

 2. A person deprived of his/her parental rights is not released from the responsibility to maintain the child.  In parallel with deprivation of parental rights, the court may, upon request of the applicant or upon its own initiative, to decide the issue of levying maintenance for the child.


Article 167. Placing the Child whose Parents have been Deprived of their Parental Rights

1. Whenever the child lived with the parent who has been deprived of his/her parental rights, the court decides the issue of their eventually continuing to live in the same living premises.

2. The court may render the decision to evict the parent who has been deprived of parental rights from the living premises where that parent lives together with the child if it is ascertained that he/she possesses another house and can move in, or the decision on the enforced partition of the living premises or their exchange.

3. Upon the wish of the other parent, the child can be given to him/her.

4. As long as the child cannot be placed under the care of the other parent, priority in taking the child in their charge belongs, upon their request, to the grandmother, grandfather, adult brothers and sisters, as well as other relatives.

5. Whenever the child cannot be placed under the care of the grandmother, grandfather or other relatives, stepmother, stepfather, he/she is placed in charge of the Custody and Care Authority.

6. The child that has been placed under the care of relatives, stepmother, stepfather, the Custody and Care Authority retains the right to live in the living premises he/she stayed before and may return therein at any time.

7. The manner, in which the child is taken from, and given to, is established by law.

Article 168. Access of the Mother, the Father that have been Deprived of their Parental Rights to the Child

1. The mother, the father deprived of their parental rights may take legal action for giving them the right to access to their child.  The court may allow single, periodical access to the child unless such access is damageable to the life, health and moral education of the child, on the condition of the presence of another person.

Article 169. Resuming Parental Rights

1. The mother, the father deprived of their parental rights may take legal action for resuming their parental rights.

2. Resuming parental rights is impossible if the child has been adopted and unless the adoption has been revoked or found invalid judicially.

3. Resuming parental rights is impossible if at the time of court's hearing the case the child has attained the full age.

4. The court checks the extent to which behavior of the person deprived of parental rights has changed and ascertains the circumstances that were the reason for deprivation of parental rights and pronounces the decision, in which the child's interests are of paramount consideration.

5. When resolving the case related to resuming parental rights of one of parents, the court takes into account the view of the other parent, other persons with whom the child lives.

6. In case of dismissing the action for resuming parental rights, re-taking legal action for resuming parental rights is possible but after one year from the date on which the court's decision to dismiss such an action has become res judicata.

Article 170. Separating the Child from the Parents without Depriving them of Parental Rights

1. The court may decide to take the child from the parents or one of them without depriving them parental rights, in cases referred to in Article 164, paragraph 1, subparagraphs 2 -5, as well as in other situations unless leaving the child with them is dangerous to the life, health and moral education of the child.  In such a case, the child is given to the other parent, grandmother, and grandfather, other relatives upon their request or to the Custody and Care Authority.

2. In exceptional situations, when the child's life or health is seriously endangered, the Custody and Care Authority, or the prosecutor may render the decision on immediately separating the child from his/her parents.  In such a case, the Custody and Care Authority shall inform the prosecutor thereon without any delay and, within seven days after the decision has been made, take legal action for depriving both parents or one of them of parental rights or for separating the child from his/her mother, father without depriving them of parental rights.  Similar legal action may be taken by the prosecutor.

3. Whenever circumstances, which hampered the parents in appropriately educating their child disappear, the court, upon parents' application, may decide on giving the child back to them.

4. In satisfying the action for separating the child from his/her mother, father without depriving them of parental rights, the court decides the issue of levying maintenance on them in favor of the child.

5. Provisions of paragraphs 1-3 of the present Article apply to situations when the child is taken from persons with whom he/she lives.


Article 171. Due Regard to the Child's Views in Deciding Matters Related to His/Her Life

1. A child has the right to be heard by his/her parents, other members of the family, officials in matters that relate to him/her personally and to the family.

2. A child able to express his/her views should be heard in proceedings related to the dispute between his/her parents, other persons about the child's education, place of residence, and to the dispute about deprivation of parental rights, resumption of parental rights, and administration of his/her property.

3. The court has the right to pronounce a decision without taking into account views of the child if the child's interests so require.


Article 172. Responsibility of the Child, Adult Daughter and Son to Care about their Parents

1. The child, adult daughter and son shall care about their parents and assist them.

2. The adult daughter, adult son has the right to seek protection of the rights and interests of their parents that are unable to work and care about themselves, as their legal representatives and do not require special powers thereto.

3. Whenever adult daughter, adult son does not care about their parents that are unable to work and care about themselves, expenses born by providing such care may be covered with resources levied on them judicially.


**Chapter 14** PROPERTY RIGHT OF PARENTS AND CHILDREN


Article 174. Separate Property Regime for Parents and Children

1. Parents and children, in particular those living together, may own property separately.

2. In resolving a property dispute between the parents and minor, juvenile children that live together, it is understood that the property is owned by the parents.

Article 174. Right of the Child to Property Intended for His/Her Development, Training and Education

1. Property acquired by the parents or one of them to ensure the development, training and education of the child (clothes, other articles for personal use, toys, books, musical instruments, sport equipment, etc) shall be the child's property.


Article 175. Right of Parents and Children to Joint Property

1. Property acquired by the parents and their children as a result of their working collectively or using their joint resources belongs to them as joint property.


Article 176. Right of Parents and Children to Use Property

1. The parents shall transfer to the child's use the property, which has to ensure his/her education and development.

2. The rights of parents and children to use housing, which one of them owns are established by law.


Article 177. Administering the Child's Property
1. If a minor child has a property, his/her parents administer such a property without having to have special powers thereto. The parents shall necessarily hear their child's views on the ways, in which such a property should be administered.

2. If one of parents concludes an agreement in respect of the property of the minor child, it is understood that he/she acts upon the consent of the other parent. The other parent has the right to apply to the court for annulment of the agreement concerned as one that has been entered in without his/her consent if such an agreement goes beyond the limits of a minor household agreement.

3. The parents decide matters related to the administration of the child's property jointly. Disputes, which can arise between the parents with regard to the administration of the child's property, may be resolved by the Custody and Care Authority, or the court.

4. After terminating such administration, the parents shall have the duty to return to the child the property they have administered together with any earnings obtained therefrom.

5. Inappropriate discharge by the parents of their responsibilities in respect of the child's property administration creates the ground for imposing on them the duty to repair material damage inflicted on the child.


Article 178. Using Earnings Obtained from the Child's Property

1. Parents may use earnings obtained from the property of a minor child for education and maintenance of other children and for pressing needs of the family.

2. A minor child shall dispose of the earnings obtained from his/her property in accordance with the Civil Code of Ukraine (1540-06).

Article 179. Ownership Right to Maintenance Paid for the Child

1. Maintenance received for the child is owned by the parent in whose favor it is paid and should be used for earmarked purposes.  A minor child has the right to participate in administering maintenance, which has been paid to maintain him/her.

 2. If the parent with whom the child lives dies, maintenance shall be the property of the child.  The custodian administers maintenance, which has been paid to maintain a minor child.  A juvenile child has the right to personally receive and administer maintenance in accordance with the Civil Code of Ukraine (1540-06).

**Chapter 15** RESPONSIBILITY OF THE MOTHER, THE FATHER TO MAINTAIN THE CHILD AND ITS DISCHARGE

Article 180. Parents' Responsibility to Maintain their Child

1. The parents shall have the responsibility to maintain the child till he/she attains the full age.

Article 181. Ways, in which the Parents Should Discharge their Responsibility to Maintain the Child

1. Ways, in which the parents should discharge their responsibility to maintain their child, are determined upon agreement between them.

2. Upon agreement between the parents, the parent who does not live with the child may participate in his/her maintenance in cash form or in kind.

3. Upon judicial decision, money for the child's maintenance (maintenance) are awarded as a share of earnings of his/her mother, father and/or as a fixed amount.

4. Whenever one of the parent leaves for permanent residence in a State with which Ukraine has not signed the agreement on legal assistance, the maintenance are levied as prescribed by the Cabinet of Ministers of Ukraine.

5. If the parent's place of residence is unknown or if they avoid paying maintenance or do not have the possibility to maintain their child, the latter is awarded temporary State benefit. The manner, in which such temporary State benefit is awarded, shall be prescribed by the Cabinet of Ministers of Ukraine.

Article 182. Circumstances the Court Takes into Consideration when Determining the Amount of Maintenance

1. When determining the amount of maintenance to be paid, the court takes into consideration:

1) state of health and financial situation of the child;

2) state of health and financial situation of the maintenance payer;

3) if the maintenance payer has other children, the husband, the wife, parents, daughter, and son who are unable to work;

4) other essential circumstances.

2. The amount of maintenance to be paid for one child may not, under any circumstances, be less than the non-taxable minimum income of citizens.

Article 183. Determining the Amount of Maintenance as a Share of Earnings (Income) of the Child's Mother, Father

1. The amount of earnings (income) of the mother, the father to be paid as maintenance for the child is determined by court.

2. Whenever maintenance is levied for two and more children, the court determines a single share of earnings (income) of the mother, the father to be paid for their maintenance, such a share being levied till the eldest child will have attained the full age.

3. If after the eldest child has attained the full age, neither parent applied to the court for determining the amount of maintenance to be paid for other children, the maintenance is levied in the same amount less the portion, to which was entitled the child that has attained the full age.

Article 184. Determining the Amount of Maintenance as a Fixed Cash Sum

1. Whenever the maintenance payer obtains occasional earnings or receive a part of his/her income in kind, as well as under other essential circumstances, the court, upon maintenance payer or payee's application, may determine the amount of maintenance to paid as a fixed cash sum.

2. The amount of maintenance determined by the court as a fixed cash sum is subject to indexing in accordance with law.

Article 185. Sharing Additional Expenses for the Child by Parents

1. The parent that has been imposed the duty to pay maintenance for the child, as well as the parent against whom a claim to levy maintenance has not been lodged, shall necessarily share additional expenses for the child when such expenses were born in

connection with special circumstances (development of the child's skills, his/her illness, injury, etc.).

 2. The extent, to which one of the parents should share additional expenses for the child in case of a dispute, is determined by court, which takes into account essential circumstances.  Additional expenses for the child may be financed in advance or covered, on a lump-sum, periodical or permanent basis, after they have been actually born.

Article 186. Control by the Custody and Care Authority of the Earmarked Use of Maintenance

1. Upon application of the maintenance payer or on its own discretion, the Custody and Care Authority checks the earmarked use of the maintenance.

2. Whenever the maintenance is not used for the earmarked purposes, the maintenance payer may apply to court for reducing the amount of the maintenance or for depositing a portion of the maintenance at the child's personal account in a subsidiary of the State Savings Bank of Ukraine.

Article 187. Withholding Maintenance for the Child upon Maintenance Payer Request

1. One of the parents may lodge, at the his/her place of employment, at the place where his/her pension, fellowship is paid, an application for withholding the maintenance for the child from his/her wage, pension or fellowship in the amount and during the period referred to in such an application.  He/she may withdraw such an application.

2. Based on the application filed by one of the parents, the maintenance is withheld within three days from the day fixed for the payment of the wage, pension, and fellowship.

3. Based on the application filed by one of the parents, the maintenance may also be withheld if the total sum, which is subject to deduction on the basis of the application or court orders, exceeds the half of the wage, pension or fellowship, as well as if the maintenance for another child is being already levied from this parent.

Article 188. Releasing Parents from the Responsibility to Maintain the Child

1. The parents may be released from the responsibility to maintain the child if the child's earnings greatly exceed the income of either parent and fully meet the child's needs.

Article 189. Agreement between the Parents for Maintenance of the Child

1. The parents may conclude a agreement of maintenance payment for the child, such a agreement specifying the amount of maintenance to be paid and the time-limit for its payment. Provisions of such a agreement may not violate the rights of the child as laid down in the present Code.  The agreement shall be drawn up in written and certified by a notary.

53

2. If one of the parents is in default on his/her obligations, the maintenance may be levied on him/her based on the notarial special execution.

Article 190. Termination of the Right to Maintenance for the Child as a Result of Acquiring Ownership Right to a Real Estate

1. The parent with whom the child lives and the parent with whom the child does not live, upon permission of the Custody and Care Authority, may conclude a agreement of termination of the right to maintenance for the child in connection with the transfer of ownership of a real estate (house, apartment, land lot, etc.).  Such an agreement should be certified by a notary and is subject to the State registration.  If the child has attained the age of 14, he/she takes part in the conclusion of this agreement.

2. The ownership right to a real estate is acquired by the child himself/herself or the child and the parent with whom he/she lives, in the latter case the real estate being deemed to be their jointly shared property.  In case of concluding such a agreement, the parent with whom the child lives undertakes to maintain the child himself/herself.

3. Concluding such a agreement does not release the parent with whom the child does not live from the responsibility to share additional expenses for the child.

4. The property obtained under the agreement referred to in paragraph 1 of the present Article may not be subject to the enforcement of any execution.

5. Property the child has obtained under such a agreement may be alienated prior to his/her attainment of the full age only upon permission of the Custody and Care Authority.

6. The agreement concluded in accordance with paragraph 1 of the present Article is judicially annulled upon request of the alienator of the real estate if his first name as the father has been withdrawn from the birth record. If the agreement is found invalid, the ownership right of the alienator to the real estate is renewed.

7. Upon complaint of the alienator of the real estate, agreement concluded in accordance with paragraph 1 of the present Article may be denounced if the parent with whom the child lives disregards his/her responsibility to maintain the child.

Article 191. Time from which the Maintenance for the Child is Awarded

1. Maintenance for the child is awarded judicially as from the day of legal action.

2. Maintenance for the previous time may be awarded if the plaintiff produces evidence to the court that he/she has taken measures to obtain maintenance from the defendant but has not succeeded because the latter avoided paying it. In such a case, the court may award maintenance for the previous time but not more than for the last three years.

Article 192. Changing the Amount of Maintenance

1. The amount of maintenance determined by the court or upon parents' agreement may be later reduced or increased judicially upon the complaint of the maintenance payer or payee if financial or marital situation of one of them changes or the state of health degrades or improves.

2. The amount of maintenance may be reduced if the child is maintained by the State, territorial community or a legal person.

Article 193. Levying Maintenance and Other Resources for the Child that Stays in a Health, Educative or any other Institution

1. Placing the child into a health, educative or any other institution does not discontinue levying maintenance in favor of the parent with whom the child lived before if the maintenance is used for the purposes it is earmarked.

2. Whenever the parents do not participate in the maintenance of the child placed to a State or communal health, educative or any other institution, the maintenance may levied upon them on general grounds.

3. Upon court's decision, the maintenance may be transferred at the child's personal account in a subsidiary of the State Savings Bank of Ukraine.

4. State pensions, other allowances and survivors' benefit are also transferred to the child's personal account.

Article 194. Levying Maintenance for the Previous Time and Arrears in Maintenance Payment

1. Maintenance for the previous time may be levied based on the writ of execution but not more than for the three years, which preceded servicing the writ of execution

2. If the maintenance was not levied in accordance with the enforced writ of execution because the maintenance payer was wanted or stayed abroad, the maintenance has to be paid for the whole previous period.

3. Arrears in maintenance levied under Article 187 or the present Code, are repaid, upon the maintenance payer's application, in the place where his/her wage, pension, fellowship is paid, or levied upon court's decision.

4. Arrears in maintenance payment are levied irrespective of whether the child has attained the full age and, in case referred to in Article 199 of the present Code, - until the child has attained the age of 23.

5. Provisions of paragraphs 1 – 3 of the present Article, as well as Articles 195-197 of the present Code apply to the levying maintenance in favor of other persons specified in the present Code.

Article 195. Determining Arrears in Maintenance Awarded as a Share of Earnings (Income)

1. Arrears in maintenance awarded as a share of earnings (income) are determined based on the actual earnings (income), which the maintenance payer was obtaining throughout the period, during which the maintenance was not levied.

2. Whenever the maintenance payer was unemployed at the time when arrears in maintenance arouse but is employed at the time of their determination, the arrears are determined based on the earnings (income) he/she is obtaining.

3. Whenever the maintenance payer was unemployed at the time when arrears in maintenance arouse and is not employed at the time of their determination, the arrears are calculated based on the average wage the worker having the same qualification or unqualified worker receives in the given area.

4. The amount of arrears in payment of maintenance is calculated by the State executor and in case of a dispute – by court.


Article 196. Responsibility for the Late Payment of Maintenance

1. If arrears generate because of the person that has the duty to pay maintenance upon court's decision, the maintenance payee is entitled for the forfeit (interest for default) in the amount of one per cent of the sum of unpaid maintenance for each day of default.

 2. The amount of the forfeit may be reduced by the court in the light of the financial and marital situation of the maintenance payer.

3. The forfeit is not paid if the maintenance payer has not attained the full age.

Article 197. Establishing Deadline for the Payment of Maintenance. Releasing from the Payment of Arrears in Maintenance

1. In the light of the financial and marital situation of the maintenance payer, the court may postpone the payment of maintenance or allow paying it by installments.

 2. Upon complaint of the maintenance payer, the court may wholly or partly release him/her from the payment of arrears in maintenance if such arrears arouse as a result his/her serious illness or any other essential circumstance whatsoever.

3. The court may release the maintenance payer from the payment of arrears if it is ascertained that such arrears arose because the person in whose favor the maintenance had been awarded failed to service the writ of execution without valid reasons.


**Chapter 16** PARENTS' RESPONSIBILITY TO MAINTAIN AN ADULT DAUGHTER, SON AND ITS DISCHARGE


Article 198. Grounds for the Creation of Parents' Responsibility to Maintain an Adult

Daughter, Son

1. The parents shall necessarily maintain their adult daughter, son that is unable to work and in need of material support if the parents can provide such a material support.

Article 199. Parents' Responsibility to Maintain an Adult Daughter, Son that Continue Studying

1. Whenever an adult daughter, son continue studying and in this connection need material support, the parents shall have the duty to maintain them till they will have attained the age of 23 if they are able to provide such a support.

2. The right to maintenance terminates when studying finishes.

3. A legal action for levying maintenance may be taken by the parent with whom the daughter, son lives, as well as the daughter and the son themselves if they continue studying.

Article 200. Amount of Maintenance to be Paid for an Adult Daughter, Son

1. The court determines the amount of maintenance to be paid for an adult daughter, son as a fixed cash sum and/or as a share of earnings (income) of the maintenance payer taking into account circumstances referred to in Article 182 of the present Code.

2. When determining the amount of maintenance to be paid by one of the parents, the court considers the possibility of providing maintenance by the other parent, his/her wife, husband and adult daughter, son.

Article 201. Applying Provisions of the Present Code to Relations with regard to Parents' Responsibility to Maintain their Adult Daughter, Son

1. Provisions of Articles 187, 189-192 and 194-197 of the present Code apply to relations between the parents and their daughter, son in respect of providing them maintenance.


**Chapter 17** RESPONSIBILITY OF AN ADULT DAUGHTER, SON TO MAINTAIN THEIR PARENTS AND ITS DISCHARGE

Article 202. Grounds for the Creation of the Responsibility of an Adult Daughter, Son to Maintain their Parents

1. An adult daughter, son shall have the duty to maintain their parents that are unable to work and in need of material support.

2. If the mother, the father has been deprived of their parental rights and if these rights have not been renewed, a daughter, a son in whose respect the parents were deprived of their parental rights assume no responsibility to maintain their mother, father.

Article 203. Responsibility of a Daughter, Son to Share Additional Expenses for their Parents

1. A daughter, a son, in addition to the payment of maintenance, shall necessarily share additional expenses born for their parents in connection with a serious illness, disability and inability to work.

Article 204. Releasing a Daughter, Son from the Responsibility to Maintain their Mother, Father

1. The court may release a daughter, a son from the responsibility to maintain their mother, the father and from the responsibility to share additional expenses born for their parents if it is ascertained that the mother, the father avoided discharging their parental responsibility.  At an exceptional basis, the court may award maintenance to be paid by the daughter, son during the period, which does not exceed three years.

Article 205. Determining the Amount of Maintenance to be Paid by a Daughter, Son

1. The court determines the amount of maintenance to be paid in favor of the parents as a fixed cash sum and/or as a share of earnings (income) taking account of the financial and marital situation of the parties concerned.

2. When determining the amount of maintenance and additional expenses, the court takes into account the possibility of obtaining maintenance from other children against whom a legal action for levying maintenance has not been taken, as well as from the wife, the husband and their parents.

Article 206. Levying on the Child Expenses for His/Her Parents' Care and Medical Treatment

1. At an exceptional basis when the mother, the father are seriously ill, disabled and when the child (Article 6 of the present Code) obtains sufficient earnings (income), the court may decide to levy on such child means, lump-sum or during a given period, to cover expenses incurred in connection with the care and medical treatment of his/her parents.

**Section IV** PLACEMENT OF CHILDREN DEPRIVED OF PARENTAL CARE

**Chapter 18** ADOPTION

Article 207. Concept of the Adoption

1. The adoption shall be the acceptance by the adopter in his/her family of a person as his/her daughter or son, such acceptance being effected based on the judicial decision, except the case referred to in Article 282 of the present Code.

2. An adoption of a child is effected in the best interests of the child to ensure him/her a stable and harmonious home.

Article 208. Person Entitled to Be Adopted

1. A child may be adopted (Article 6 of the present Code).

2. On exceptional grounds, the court may grant the adoption of the person that has attained the full age and that has no mother, father or has been deprived of their care. In such a case, the court takes into account marital status of the adopter, in particular the absence of his/her own children, and other essential circumstances.

Article 209. Adoption of a Child that Has Been Abandoned in the Maternity Home or Found

1. A child, that has been abandoned in the maternity home, other health institution or that the parents, other relatives have refused to take therefrom, may be adopted after he/she has attained the age of 2 months.

2. A child that has been exposed or found may be adopted in 2 months since he/she has been found.

Article 210. Adoption of Brothers and Sisters

1. Whenever full blood brothers and sisters are registered for eventual adoption, they may not be separated from each other as a result of the adoption.  Under essential circumstances, the court, upon consent of the Custody and Care Authority, may grant the adoption of one of them or the adoption in different ways.

2. If the adoption is disclosed to the child, the brother and the sister have the right to know his/her new place of residence.

Article 211. Persons Entitled to Be Adopters

1. A legally capable person that has attained the full age may be an adopter.

2. A person that is at least 15 years older than the child he/she wishes to adopt may be an adopter. If an adult person is adopted, the difference in age may not be less than 18 years.

3. The spouses, as well as persons referred to in paragraphs 5 and 6 of the present Article may be adopters.  Persons of the same sex may not be adopters.

59

4. Persons that are not married to each other may not adopt the same child.  Whenever such persons live together as one family, the court may grant them the adoption.

5. If a child has only the mother, such child may not be adopted by a man who is not married to his/her mother.  If a child has only the father, such child may not be adopted by a woman who is not married to his/her father. Whenever such persons live together as one family, the court may grant them the adoption.

6. If a child has only the mother or only the father who as a result of the adoption loses legal relations with the child, only one man or one woman may adopt the child.

7. The number of children an adopter may adopt is not limited.


Article 212. Persons that May not Be Adopters

1. May not be adopters persons:

 1) whose legal capacity is restricted;

 2) found legally incapable;

 3) deprived of their parental rights if such rights have not been resumed;

4) that adopted another child but such an adoption has been revoked or found null and void because of their fault;

5) that are registered or undergo a treatment in a psychoneurologic or narcologic dispensary;

6) that are alcohol or drug addicts;

7) that do not have a permanent place of residence and stable earnings (income);

8) that suffer from diseases whose list is approved by the Ministry of Health of Ukraine.

2. In addition to persons referred to in paragraph 1 of the present Article, may not be adopters other persons whose interests conflict with the interests of the child.


Article 213. Persons that Have Priority in Adopting a Child

1. If several persons have expressed their wish to adopt the same child, priority in adopting this child is given to the national of Ukraine:

1) in whose family the child is brought up;

2) that is the husband of the mother, the wife of the father of the child to be adopted;

 3) that adopts several children that are brothers, sisters;

4) that is a relative of the child.

2. In addition to persons referred to in paragraph 1 of the present Article, priority in adopting a child is given to spouses.

Article 214. Registration of Children without Parental Care that May Be Adopted

1. Managers of institutions where children that may be adopted stay, as well as officials of family care authorities, which possess information on children without parental care shall have the duty to provide such information to relevant divisions and departments of rural district, urban district in the city of Kyiv and Sevastopol State administrations, executive committees of city and urban district radas within seven days.

2. In the absence of persons wishing to adopt a child or take care of him/her, rural district, urban district in the city of Kyiv and Sevastopol State administrations, executive committees of city and urban district radas, within one month from receiving the information on such children, shall submit relevant information to the Council of Ministers of the Autonomous Republic of Crimea, region, and Kyiv and Sevastopol Municipal State Administrations.

3. In the absence of persons wishing to adopt a child or take care of him/her, the Council of Ministers of the Autonomous Republic of Crimea, region, and Kyiv and Sevastopol Municipal State Administrations, within one month from receiving the information on children that may be adopted, transmit such information for centralized registration to the Center of the Adoption of Children attached to the specially authorized central public authority in the field of education (hereinafter referred to as "the Center of the Adoption of Children").

4. Failure to comply with the provisions of paragraphs 1-3 of the present Article, submission of misleading information, as well as actions aimed at concealing a child from the adoption, entails responsibility as prescribed by law of managers of institutions where children stay.

Article 215. Registration of Persons Wishing to Adopt a Child

1. Register of persons wishing to adopt a child is kept by divisions and departments of rural district, urban district in the city of Kyiv and Sevastopol State administrations, executive committees of city and urban district radas, in charge of cases related to children care, as well as by the Ministry of Education of the Autonomous Republic of Crimea, education departments of region, and Kyiv and Sevastopol Municipal State Administrations, and by the Center for the Adoption of Children, in the manner prescribed by the Cabinet of Ministers of Ukraine.

2. Register of aliens and stateless persons wishing to adopt a child is kept exclusively by the Center for the Adoption of Children.

Article 216. Prohibition of Mediation and Commercial Activities with regard to the Adoption of Children

1. Mediation and commercial activities with regard to the adoption of children, their placement in custody, care or for education in Ukrainian nationals' families, of aliens or stateless persons are not allowed.


Article 217. Parents' Consent to the Adoption of a Child

1. An adoption of a child is effected upon free consent of his/her parents.

2. The parents' consent to the adoption of the child shall be unconditional. Any agreement that the adopter should pay to the parents, custodians or other persons with whom the child live for the consent to the adoption of the child is considered to be null and void.

3. The parents may give their consent to the adoption of the child only after he/she has attained the age of 2 months.

4. If the child's mother or father has not attained the full age, in addition to their consent to the adoption of the child there should be the consent given by their parents.

5. Written consent of the parents to the adoption of their child shall be certified by a notary.

6. The child's mother, father has the right to withdraw their consent to the adoption of their child before the court has granted the adoption.


Article 218. Child's Consent to the Adoption

1. For a child to be adopted there should be his/her consent.  A child gives consent to the adoption in the form, which is consistent with his/her age.

2. The child shall be informed on legal consequences of the adoption.

3. The child's consent is not required for the adoption if he/she, because of the age or state of health, does not have sufficient understanding of the adoption.

4. The child's consent to the adoption is not required if he/she lives in the adopters' family and considers them as his/her parents.


Article Adoption of a Child without the Parents' Consent

1. The adoption of a child is effected without the parents' consent if they have been:

 1) unknown,
 2) found missing,
 3) found legally incapable,
 4) deprived of parental rights in respect of the child to be adopted.

62

 2. A child may be adopted without the adult parents' consent if the court ascertains that they do not live with the child for more than six months without valid reasons, do not provide to the child parental care, do not bring him/her up and do not maintain the child.

Article 220. Consent of the other Spouse to the Adoption

1. For one of the spouses to be able to adopt a child, a written consent of the other spouse certified by a notary is required.

2. A child may be adopted without consent of the other spouse if the latter has been found missing, legally incapable, as well as under other essential circumstances.

3. A child shall be adopted without consent of the other spouse in the case referred to in Article 120 of the present Code.

Article 221. Consent of the Custodian, the Caretaker of the Child to the Adoption of the Child

1. Irrespectively of the parents' consent, a written consent of the custodian or the caretaker of the child is required for the adoption of the child being in the custody or care, as well as for the adoption of the child whose parents are in the custody or care.

2. Whenever the custodian or the caretaker of the child has not given consent to the adoption of the child, such consent may be given by the Custody and Care Authority.

3. A child may be adopted without consent of the custodian or the caretaker of the child or the Custody and Care Authority if the court satisfies that the adoption meets the interests of the child.

Article 222. Consent of the Health or Educative Institution to the Adoption of the Child

1. A written consent of the health or educative institution is required for the adoption of the child that does not have parents and stays in such health or educative institution. A child may be adopted without consent of the institution if the court satisfies that the adoption meets the interests of the child.

Article 223. Application for the Adoption of a Child

1. A person wishing to adopt a child lodges with the court the application for adoption. Such an application may not be filed by a representative.

2. The application for adoption may be withdrawn before the court's decision relating to the adoption of the child has become res judicata.

Article 224. Court's Decision relating to the Adoption

1. When granting the adoption of a child, the court takes into consideration essential

circumstances, in particular:

1) the state of health and material situation of the person wishing to adopt a child, his/her marital status and living conditions and views in respect of bringing up a child;

2) why the adopter wishes to adopt a child;

3) where only one of two spouses of the same marriage applies to adopt a child, why the other spouse does not join in the application

4) the mutual suitability of the child and the adopter, and the length of time that the child has been his/her care;

5) the personality and health of the child;

6) the views of the child in respect of the adopter.

2. When all requirements as prescribed in the present Code are satisfied and if the person wishing to adopt a child is able to ensure stable and harmonious home for the child, the court takes the decision whereby such a person is pronounced as the adopter of the child.

3. The court may not overrule the adoption on the ground that the adopter already has or can give birth to, a child.

4. When taking a decision on the adoption of an adult person, the court takes into consideration why the persons wish to adopt him/her, whether their living together is possible, their marital status and health, as well as other essential circumstances.


Article 225. Time Beginning from which an Adoption is Completed

1. An adoption shall be considered completed the day on which the court's decision on granting the adoption has become res judicata.

2. Upon the adopter's request, the public civil status act registration authority, based on the judicial decision, issues Certificate of Adoption whose specimen is approved by the Cabinet of Ministers of Ukraine.


Article 226. Right to the Confidentiality of an Adoption

1. A person has the right that those registered as wishing to adopt a child, seeking a child for the adoption, applying for the adoption and considering such an application, as well as court's decision on granting the adoption were not disclosed.

2. An adopted child has the right that his/her adoption is not disclosed, including to himself/herself.

3. An adopted person has the right to obtain information on his/her adoption after he/she has attained the age of 14.

Article 227. Right not to Disclose the Fact of Adoption to an Adopted Child

1. An adopter has the right not to disclose the fact of adoption to his/her adopted child and demand that persons who learned such information should keep it confidential both before and after the child has attained the full age.

2. An adopter has the right not to disclose the fact of adoption to his/her adopted child if revealing this fact can affect the child's interests.

3. Whenever a child that has not attained the age of 7 is adopted, officials, in ascertaining his/her consent for the adoption, shall necessarily take measures not to disclose the fact of adoption to the child himself/herself.


Article 228. Ensuring Confidentiality of an Adoption

1. Persons that, in connection with their official duties, have access to the information relating to adoption (registration of those wishing to adopt a child, seeking a child for the adoption, applying for the adoption, judicial consideration of the case related to an adoption, and control of the respect for rights of an adopted child, etc.) shall have the duty not to disclose such an information even if the fact of adoption is not a secret for the child.

2. Information on the adoption may be provided by the court only upon the adopter's consent, except situations when such information is needed to law enforcement authorities or the court in connection with the proceedings in a civil or criminal case.

3. Confidentiality of the adoption shall also be secured in accordance with Articles 229-231 of the present Code.

4. Persons that revealed the fact of adoption shall be brought to responsibility prescribed by law.

Article 229. Adopter's Right to Be Registered as the Mother, the Father of the Child

1. A person that applied for an adoption may wish to be entered in the Birth Register as the mother, the father of the child or an adult person.

2. If a child that has attained the age of 7 is adopted, the child's consent is required for the adopter to be registered as his/her mother, father, except as set forth in Article 218, paragraph 4, of the present Code.

3. The court satisfies such an application in the decision to grant the adoption if this is in the interest of the child.


Article 230. Adopter's Right to Change Information on the Place and Date of Birth of the Child

1. A person that applied for an adoption may wish to change information on the place and date of birth of the child.

2. Date of birth may be changed not more than for six months.

3. In its decision to grant the adoption, the court changes information on the place and date of birth of the child if this is in the interest of the child.

Article 231. Changing Family Name, First Name and Patronymic of an Adopted Person

1. Whenever the adopters are the wife and the husband and if they are registered as the child's parents, the family name and the patronymic of the child shall be changed accordingly.  Upon the adopters' application, the child's first name may be also changed. There should be the child's consent for such change. Such a consent is not required if the child lives in the adopters' family and has used to the new first name.

2. If the adopter is registered as the child's father, the child's patronymic is changed accordingly.

3. Whenever an adult person is adopted, his/her family name, first name and patronymic may be changed in connection with the adoption, upon application of the adopter and the adopted person.

4. The court includes changes allowed in the present Article in its decision to grant the adoption.

Article 232. Legal Consequences of an Adoption

1. Upon completion of an adoption, personal and property rights and responsibilities cease to exist between the parents and the adopted person, as well as between the latter and his/her relatives by origin.  If a child is adopted by only one person, these rights and responsibilities may be retained upon the mother's wish whenever the adopter is a man, or upon the father's wish whenever the adopter is a woman.

2. If after one of the child's parent has died or been found legally incapable, the other parent remarried and his/her new wife, husband wishes to adopt the child, the grandmother, grandfather of the child on the part of the parent that has died or been found legally incapable, full blood brothers and sisters of the child may lodge with the court an application for retaining legal relationship between them and the child to be adopted.  The court considers such an application together with the application for the adoption and satisfies it if this is in the interests of the child.

3. Upon adoption, mutual personal non-property and property rights and responsibilities are created between the adopted person (and in future – between his/her children, grandchildren) and the adopter and his/her relatives by origin.

4. In respect of the adopted child, an adoption confers on the adopter the rights and responsibilities of every kind that the parents have in respect of their child.

5. In respect of the adopter, an adoption confers on the adopted person the rights and responsibilities of every kind that a child has in respect of his/her parents.


## Article 233. Changing the Record of Birth of the Adopted Child

1. Based on the judicial decision to grant the adoption, the public civil status act registration authority introduces relevant changes in the record of birth of the child or the adult person and issues a new Certificate of Birth, which reflects the changes made. The previous Certificate of Birth is annulled.


## Article 234. Retention of Rights the Child Enjoyed before the Adoption

1. An adopted child retains the right to the pension, other social payments, as well as the survivor's benefit he/she had before the adoption.


## Article 235. Control of the Respect for Rights of an Adopted Child

1. The Custody and Care Authority exercises control of the respect for rights of the adopted children residing in Ukraine.

2. Control of the respect for rights of an adopted child is exercised till the child has attained the full age.


## Article 236. Annulment of the Adoption

1. The adoption shall be annulled by court if it was completed without consent of the child and the parents whenever such consent was necessary.

2. The adoption shall be annulled by court if the adopter did not want to have rights and responsibilities arising from the adoption (fictitious adoption).

3. An adoption may be annulled by court if it was completed on the basis of faked documents.

4. An adoption may be annulled by court in the absence of the consent of the persons referred to in Articles 220 – 222 of the present Code.

5. If one of spouses adopts the child of the other spouse, the adoption may be annulled by court if it is ascertained that, at the time of the adoption, the other spouse did not intend to continue marital relationships.


## Article 237. Legal Consequences of the Annulment of an Adoption

1. An annulled adoption is cancelled beginning from the time of its completion.

2. The annulment of an adoption terminates the rights and responsibilities, which were created earlier and are established by law for an adopter, his/her relatives and the adopted child.

3. Should the adoption be annulled, the rights and responsibilities between the child and his/her parents and other relatives by origin are restored.

4. Should the adoption be annulled, the child that has not attained the age of 14, upon wish of his/her parents or other relatives, shall be given to them and when it is impossible – to the Custody and Care Authority.

5. If the adoption was annulled, the child reverts to his/her pre-adoption family name, first name and patronymic.  The child may continue having the family name, first name and patronymic he/she was passed on in connection with the adoption.

6. The court may decide to levy maintenance on the adopter during 2 years maximum if the child does not have parents or if the parents cannot maintain the child, provided that the adopter is able to provide material support.


Article 238. Revocation of an Adoption

1. An adoption may be revoked by court if:

1) the adoption is contrary to interest of the child and does not ensure his/her education in the family;

2) the child suffers from the half-wittedness, mental or any other serious unrecoverable disease, about which the adopter did not know and could not know at the time of adoption;

3) the relations between the adopter and the child, notwithstanding the adopter's will, make impossible their living together and the adopter's discharging his/her parental responsibilities;

2. An adoption may not be revoked after the child has attained the full age.  An adoption may be revoked after the child has attained the full age if unlawful conduct by the adoptee, the adopter endangers the life and health of the adoptee, the adopter or any other members of the family.

3. The adoption of an adult person may be revoked by the court upon mutual consent of the adopter and the adoptee or upon request of either of them if family relations between them were not formed.

4. An adoption is revoked the day on which judicial decision has become res judicata.


Article 239. Legal Consequences of the Revocation of an Adoption

1. Revocation of the adoption terminates the rights and responsibilities, which were created in connection with the adoption between the child and the adopter, and his/her relatives.

2. Should the adoption be revoked, the rights and responsibilities between the child and his/her parents and other relatives by origin are restored.

3. Should the adoption be revoked, the child, upon wish of his/her parents or other relatives, shall be given to them and when it is impossible – to the Custody and Care Authority.

4. Whenever the adoption is revoked on the ground referred to in Article 238, paragraph 1, subparagraph 1, of the present Code and if the child is not given to his/her parents, he/she retains the right to continue living in the living premises where he/she lived after the adoption.

5. If the adoption is revoked, the child may continue having the family name, first name and patronymic he/she was passed on in connection with the adoption. Upon the child's wish, he/she reverts to his/her pre-adoption family name, first name and patronymic.

6. If the adoption is revoked on the ground referred to in Article 238, paragraph 1, subparagraph 1, of the present Code and if the child is not given to his/her parents, the court may decide to levy maintenance on the adopter provided that the adopter is able to provide material support.


Article 240. Persons that May Take a Legal Action for the Revocation or Annulment of an Adoption

1. The right to take a legal action for the revocation or annulment of an adoption belongs to the parents, adopter, custodian, the Custody and Care Authority, and the prosecutor, as well as the adopted child that has attained the age of 14.


Article 241. Restoration of the Record of Birth in Case of the Revocation or Annulment of an Adoption

1. After judicial decision on the annulment or revocation of an adoption has become res judicata, the court, within one month, shall transmit a copy of its decision to the public civil status act registration authority in the place where the child's birth was registered.

2. The public civil status act registration authority, based on the judicial decision on the annulment or revocation of the adoption, introduces changes in the Record of the Child's Birth.


Article 242. Depriving the Adopter of Parental Rights

1. Whenever the adopter was registered as the mother, father of the adopted child, he/she may be deprived of parental rights under circumstances specified in Article 164 of the present Code.

2. Depriving an adopter of parental rights entails consequences referred to in Article 166 of the present Code. If the adopter deprived of parental rights dies, the child acquires the right of succession on the general grounds.

3. Parental rights of an adopter may be resumed in accordance with Article 169 of the present Code.

### Chapter 19 CUSTODY AND CARE OF CHILDREN

Article 243. Extending Custody and Care to Children

1. The custody and care are extended to children without parental care.

2. The custody is extended to a child under the age of 14, the care is extended to a child that is from 14 to 18 years of age.

3. The custody, care is granted by the Custody and Care Authority, as well as by court in cases set forth in the Civil Code of Ukraine (1540-06)

Article 244. Persons that May Be Custodian, Caretaker of a Child

1. A person that has attained the full age and is legally capable may be custodian, caretaker of the child upon consent of the latter.

2. When appointing a custodian or caretaker for a child, the Custody and Care Authority takes into consideration personal identity of the person, his/her ability to bring up a child, his/her attitude towards children, as well as the wish of the child himself/herself.

3. May not be custodian, caretaker of a child a person that abuses alcohol, drugs, a person deprived of parental rights, as well as a person whose interests are incompatible with the interests of the child.

Article 245. Custody and Care of a Child Living in a Child Care Center or Health Institution

1. If a child permanently lives in a child care center or health institution, functions of the custodian and caretaker in respect of the child are performed by the administration of these institutions.

Article 246. Control by the Custody and Care Authority of the Respect for the Rights of a Child that Has Been Extended the Custody or Care

1. The Custody and Care Authority controls conditions in which a child that has been extended the custody or care is maintained, educated, and trained.

Article 247. Rights of a Child in the Custody or Care

1. A child in the custody or care has the right to:

1) live in the family of the custodian and to obtain his care;

2) conditions, which contribute to his/her comprehensive development, training, and education, as well as the right to respect for his/her dignity;

3) retain the right for housing where he/she lived prior the custody or care was granted. In cases where such housing does not exist, a child has the right to obtain one in accordance with law;

4) be protected against any abuse on the part of his/her custodian or caretaker.


2. Custody and care do not terminate the right of a child to maintenance, pension, and other social allowances, as well as the right to a survivor's benefit.


Article 248. Rights of a Child without Parental Care that Lives in a Child Care Center or Health Institution

1. A child without parental care that lives in a child care center or health institution has the right to:

1) comprehensive development, education, and training, as well as to respect for his/her dignity;

2) retain the right for housing where he/she lived previously. In cases where such housing does not exist, a child has the right to obtain one in accordance with law;

3) privileges prescribed by law, when seeking a job after the period of his/her staying in the institution concerned has come to an end.

4) Placing a child to the institution referred to in paragraph 1 of the present Article does not terminate the child's right to maintenance, pension, and other social allowances, as well as the right to a survivor's benefit.

 Article 249. Rights of the Custodian, Caretaker in respect of the Child

1. The custodian, caretaker shall bring up the child, care about his/her health, physical, mental, and spiritual development, as well as ensure that the child obtains full general secondary education. The custodian, caretaker has the right to determine, at his own discretion, ways in which the child should be educated, taking into account the child's views and recommendations given by the Custody and Care Authority.

2. The custodian, caretaker has the right to demand that the child should be returned back from any person that keeps him/her against law or judicial decision.

3. The custodian, caretaker may not obstruct communication of the child with his/her parents and other relatives unless such a communication is contrary to the interests of the child.

4. Civil rights and obligations of the custodian, caretaker are laid down in the Civil Code of Ukraine (1540-06).

5. The custodian, caretaker discharges responsibilities in respect of the custody and care free of charge.

Article 250. Termination of the Custody, Care of a Child

1. The custody, care is terminated in cases prescribed in the Civil Code of Ukraine (1540-06).

Article 251. Releasing a Custodian and Caretaker from their Responsibilities in respect of the Child

1. A person may be released from his/her responsibilities as the custodian or caretaker of the child in cases set forth in the Civil Code of Ukraine (1540-06), as well as when relationships between the custodian, caretaker and the child impede exercising the custody or care.

**Chapter 20** FORSTER CARE OF CHILDREN

Article 252. Foster Agreement

1. Under a foster agreement, the Custody and Care Authority places a child that is an orphan or otherwise deprived of parental care in the family of another person (foster parent) till the child reaches the full age, for remuneration.

Article 253. Child's Consent to Living in the Family of his/her Foster Parent

1. Whenever the child has attained the age of being able to express his/her views, the placement of such a child in a foster family requires consent of the child.

Article 254. Foster Remuneration

1. Foster care of a child is remunerated, the amount of such remuneration being determined upon agreement between the foster parent and the Custody and Care Authority.

Article 255. Foster Parent's Responsibilities

1. A foster parent shall:

1) provide the child with housing, clothes, food, etc.

2) create conditions for training, physical and spiritual development of the child;

3) protect the child, his/her rights and interests as the custodian or caretaker without having particular powers thereto.

Article 256. Termination of a Foster Agreement

1. A foster agreement shall be terminated if the foster parent or the foster child that has attained the age of 14 refuses such an agreement.  Pending the appointment of a new foster parent for the child or the placement of the child in care of another person or educational, health or social institution, the foster parent that has refused the foster agreement shall necessarily care about the child.

2. A foster agreement may be denounced upon agreement between the parties involved therein or upon judicial decision if the foster parent fails to discharge his/her responsibilities or if relationships between the foster parent and the foster child impede fulfilling obligations under the foster agreement .

**Section V RIGHTS AND RESPONSIBILITIES OF OTHER FAMILY MEMBERS AND RELATIVES**

**Chapter 21** PERSONAL NON-PROPERTY RIGHTS AND RESPONSIBILITIES OF OTHER FAMILY MEMBERS AND RELATIVES

Article 257. Rights of the Grandmother and the Grandfather, the Great-Grandmother and the Great-Grandfather to Education of their Grandchildren and Great-Grandchildren

1. The grandmother and the grandfather, the great-grandmother and the great-grandfather have the right to communicate with their grandchildren and great-grandchildren and participate in their education.

2. The parents or other persons with whom the child lives may not obstruct the grandmother and the grandfather, the great-grandmother and the great-grandfather in the exercise of their rights in respect of the education of their grandchildren and great-grandchildren. Whenever such an obstruction occurs, the grandmother and the grandfather, the great-grandmother and the great-grandfather may take legal action for eliminating it.

Article 258. Rights of the Grandmother and the Grandfather in respect of the Protection of their Grandchildren

1. The grandmother and the grandfather have the right to protect themselves their grandchildren.

2. The grandmother and the grandfather enjoy the right to approach the Custody and Care Authority, or the court in view of protecting rights and interests of their minor, juvenile and adult grandchildren who are unable to, work without having particular powers thereto.


Article 259. Rights of Brothers and Sisters to Communicate with Each Other

1. Rights and responsibilities as prescribed by law for brothers and sisters apply to full (half) blood brothers and sisters.

2. Brothers and sisters, in particular those living separately, have the right to communicate with each other.

3. The mother, father, grandmother, grandfather, and other persons with whom brothers and sisters that have not attained the full age live shall facilitate their communication.

4. Adult persons have the right to participate in the education of their brothers and sisters that do not have attained the full age whatever the place of their residence.


Article 260. Right of the Stepmother, the Stepfather to Participate in the Education of the Stepson, Stepdaughter

1. If the stepmother, the stepfather lives together with minor, juvenile stepson, stepdaughter, they have the right to participate in their education.


Article 261. Rights and Responsibilities of a Person that Has Admitted a Child in His/Her Family, in respect of His/Her Education

1. A person that has admitted in his/her family a child who is an orphan or otherwise deprived of parental care has the rights and responsibilities in respect of his/her education and protection in accordance with Articles 249 and 262 of the present Code.


Article 262. Rights of the Sister, Brother, Stepmother, and Stepfather and other Family Members to the Protection of Children

1. The sister, brother, stepmother, and stepfather have the right to protect themselves their minor, juvenile and adult brothers, sisters, stepson and stepdaughter who are unable to work.

2. The sister, brother, stepmother, and stepfather enjoy the right to approach the Custody and Care Authority, or the court in view of protecting rights and interests of their minor, juvenile and adult brothers, sisters, stepson and stepdaughter who are unable to work, without having particular powers thereto.

Article 263. Judicially Resolving Disputes with regard to the Participation of the Grandmother, Grandfather, Great-Grandmother, Great-Grandfather and Sisters, Brothers, Stepmother, and Stepfather in the Education of the Child

1. Disputes with regard to the participation of the grandmother, grandfather, great-grandmother, great-grandfather and sisters, brothers, stepmother, and stepfather in the education of the child are resolved by the court in accordance with Article 159 of the present Code.

Article 264. Responsibilities of a Person to Care about the Grandmother, Grandfather, Great-Grandmother and Great-Grandfather, as well as about the Person with whom He/She Lived Together as One Family

1. The grandchildren and great-grandchildren shall necessarily care about their grandmother, grandfather, great-grandmother and great-grandfather.

2. Adult brothers, sisters, stepsons and stepdaughter shall have the duty to care about the brother, sister, stepfather and stepmother who educated them and provided them material support.  Persons also assume such a responsibility in respect of those with whom they lived together as one family till the full age.

**Chapter 22** RESPONSIBILITY TO MAINTAIN OTHER FAMILY MEMBERS AND RELATIVES

Article 265. Responsibility of the Grandmother, Grandfather to Maintain their Grandchildren

1. The grandmother, grandfather shall maintain their minor, juvenile grandchildren if the latter don't have the mother, the father or if their parents are unable, for valid reasons, to provide them appropriate maintenance, on the condition that the grandmother, grandfather can provide material support.

Article 266. Responsibility of the Grandchildren to Maintain their Grandmother, Grandfather, Great-Grandmother and Great-Grandfather

1. Adult grandchildren, great-grandchildren shall maintain the grandmother, grandfather, great- grandmother and great-grandfather who unable to work and need material support and if they don't have the husband, wife, adult daughter or son or if these persons, for valid reasons, cannot provide them adequate maintenance, on the condition that adult grandchildren, great-grandchildren are able to provide material support.

Article 267. Responsibility to Maintain Brothers and Sisters

75

1. Adult brothers and sisters shall maintain minor, juvenile brothers and sisters who need material support and if they don't have the parents, the husband or wife, or if these persons, for valid reasons, cannot provide them adequate maintenance, on the condition that adult brothers and sisters are able to provide material support.

2. Adult brothers and sisters shall maintain adult brothers and sisters who are unable to work and need material support and if they don't have the husband, the wife, adult daughter or son, on the condition that adult brothers and sisters are able to provide material support.

Article 268. Responsibility of the Stepmother, Stepfather to Maintain the Stepdaughter, Stepson

1. The stepmother, the stepfather shall maintain minor, juvenile stepdaughter, stepson who live with them, if the latter don't have the mother, father, grandmother, grandfather, adult brothers and sisters or if these persons, for valid reasons, cannot provide them adequate maintenance, on the condition that the stepmother, the stepfather are able to provide material support.

2. The court may release the stepmother, the stepfather from the responsibility to maintain the stepdaughter, stepson or limit such a responsibility by a certain period, in particular in case of:

1) a short living with their mother, father;

2) inadequate conduct of the child's mother, father in the marital relationships.

Article 269. Responsibility of Other Persons to Maintain the Child

1. Persons in whose family the child was educated shall provide him/her material support if the child does not have the parents, grandmother, grandfather, adult brothers and sisters, on the condition that these persons are able to provide material support.

Article 270. Responsibility of the Stepdaughter, Stepson to Maintain the Stepmother, Stepfather

1. Adult stepdaughter, stepson shall maintain the stepmother, stepfather who are unable to work and need material support if the latter systematically provided material support to their stepdaughter, stepson at least during five years, on the condition that the stepdaughter, stepson are able to provide material support.

2. The responsibility of the stepdaughter, stepson to maintain the stepmother, stepfather shall be created if the stepmother, stepfather don't have the husband, the wife, adult daughter or son, brothers and sisters and if these persons, for valid reasons, cannot provide them adequate maintenance.

Article 271. Responsibility of a Person to Maintain Those with Whom He/She Lived Together as One Family till the Attainment of the Full Age

1. If a person lived together with relatives or any other persons as one family till he/she has attained the full age, he/she shall maintain relatives and other persons who are unable to work and with whom he/she lived at least five years, on the condition that he/she is able to provide material support.  This responsibility is created if the person in need of material support does not have the husband, the wife, adult daughter or son, brothers and sisters and if these persons, for valid reasons, cannot provide them adequate maintenance.

Article 272. Amount of Maintenance to be Levied on Other Family Members and Relatives and Time-Limits for Its Payment

1. The amount of maintenance to be levied on the other family members and relatives in favor of children and adult persons who are unable to work and need material support is determined as a share of earnings (income) or as a fixed cash sum.  When determining the amount of maintenance, the court takes into account material and family situation of the maintenance payer and the maintenance payee.

2. Whenever an action was taken only against some of those responsible for paying the maintenance, the amount of maintenance is determined in the light of the responsibility of all persons to provide maintenance. In such a case, the aggregate amount of maintenance to be levied may not be less than the non-taxable minimum income of citizens.

3. The court may prescribe the limit-limit during which the maintenance should be levied on.

Article 273. Changing the Amount of Maintenance and Releasing from its Payment

1. If material or family situation of the maintenance payer or the maintenance payee has changed, the court may, upon action brought by either of them, change the previously established amount of maintenance or release from its payment at all.  The court may release person referred to in Articles 267 – 271 of the present Code from payment of the maintenance under other essential circumstances.

Article 274. Determining Arrears in Maintenance Levied on Other Family Members and Relatives. Full or Partial Release from Arrears in Maintenance Payment

1. Determination of arrears in maintenance levied on other family members and relatives, as well as full or partial release from arrears in maintenance payment are conducted in accordance with Articles 194-197 of the present Code.

**Section IV   APPLICATION OF THE FAMILY CODE OF UKRAINE TO ALIENS AND STATELESS PERSONS. APPLICATION OF LAWS OF FOREIGN STATES AND INTERNATIONAL TREATIES IN UKRAINE**

Article 275. Rights and Responsibilities of Aliens and Stateless Persons in Marital Relationships

1. In marital relations, aliens enjoy in Ukraine the rights and responsibilities analogous to those available to Ukrainian nationals unless law provides otherwise.

2. In marital relations, stateless persons permanently residing in Ukraine enjoy in Ukraine the rights and responsibilities analogous to those available to Ukrainian nationals.

Article 276. Registration of the Marriage of a Ukrainian National with an Alien and of the Marriage between Aliens in Ukraine

1. The marriage between a Ukrainian national and an alien, as well as the marriage between aliens are registered in Ukraine in accordance with the present Code.

2. The marriage between aliens, registered in Ukraine in an Embassy or Consulate of a foreign State in Ukraine, is valid on the basis of reciprocity, if the woman and/or the man, at the time of marriage registration, were national of the State, which had sent the ambassador or the consul.

Article 277. Registration of the Marriage between Ukrainian Nationals in a Consular Post or Diplomatic Mission of Ukraine

1. The marriage between Ukrainian nationals residing outside the limits of Ukraine is registered in a consular post or diplomatic mission of Ukraine.

2. The marriage between Ukrainian nationals, as well as the marriage between an Ukrainian national and an alien, registered outside the limits of Ukraine with full respect for the form of marriage established in the State where the marriage has been registered, is valid in Ukraine unless it conflicts with Articles 24-26 of the present Code.

Article 278. Recognition of a Marriage Registered outside the Limits of Ukraine

1. The marriage between aliens, registered outside the limits of Ukraine in accordance with law of the State where the marriage has been registered, is valid in Ukraine.

Article 279. Dissolution of the Marriage between a Ukrainian National and an Alien and of the Marriage between Aliens in Ukraine

1. Dissolution of the marriage between a Ukrainian national and an alien and of the marriage between aliens in Ukraine is effected in accordance with law of Ukraine.

Article 280. Recognition of the Marriage Dissolution Made outside the Limits of Ukraine

1. Dissolution of the marriage between a Ukrainian national and an alien made outside the limits of Ukraine in accordance with law of the State concerned is valid in Ukraine if, at the time of marriage dissolution, at least one of spouses resided outside the limits of Ukraine.

2. Dissolution of the marriage between Ukrainian nationals made outside the limits of Ukraine in accordance with law of the State concerned is valid in Ukraine if, at the time of marriage dissolution, both spouses resided outside the limits of Ukraine.

3. Dissolution of the marriage between aliens made outside the limits of Ukraine in accordance with law of the State concerned is valid in Ukraine.

4. An Ukrainian national residing outside the limits of Ukraine may take a legal action for dissolution of the marriage in Ukraine if the other spouse, whatever his/her nationality, resides outside the limits of Ukraine.

Article 281. Recognition of Parentage in Ukraine. Recognition of Parentage Established outside the Limits of Ukraine

1. Recognition of parentage in Ukraine, whatever nationality of parents and the child and whatever their place of residence is, is made in accordance with law of Ukraine.

2. Child's parents residing outside the limits of Ukraine may apply for the recognition of parentage to a consular post or diplomatic mission of Ukraine.

Article 282. Adoption of a Child who is a National of Ukraine but Resides outside the Limits of Ukraine

1. The adoption by a national of Ukraine of a child who is a national of Ukraine but resides outside the limits of Ukraine is made in a consular post or diplomatic mission of Ukraine.  Whenever the adopter is not a national of Ukraine, to adopt a child who is a national of Ukraine, permission from the Center for the Adoption of Children is required. The adoption of a child who is a national of Ukraine by an alien, effected in competent authorities of the State where the child lives is deemed to be valid provided that permission of the Center for the Adoption of Children has been previously obtained.

Article 283. Adoption of a Child who is a National of Ukraine by an Alien

1. An alien shall adopt in Ukraine a child who is a national of Ukraine on the general basis set forth in Chapter 18 of the present Code.

2. A child who is a national of Ukraine may be adopted by an alien if the child has been registered in the Center for the Adoption of Children at least for one year. If the adopter is the child's relative or if the child suffers from a disease included in the special list as approved by the Ministry of Health of Ukraine, the adoption may be effected prior to this time-limit.

3. A child may be adopted by an alien if, during one year from the day on which he/she has been registered in the Center for the Adoption of Children, no Ukrainian national

expressed the wish to adopt him/her or take in custody or care in his/her family. Priority in the adoption of a child who is a national of Ukraine is given to those aliens who are:

1) relatives of the child,

2) nationals of States with which Ukraine has concluded an agreement on legal assistance.

4. For an alien to adopt a child, consent of the Center for the Adoption of Children is required.

5. Adoption by aliens is granted on the condition that the scope of child's rights will be secured to the extent not less than that established by laws of Ukraine.

6. An adopted child retains nationality of Ukraine till he/she has attained the age of 18. An adopted child has the right to preserve his/her ethnic identity in accordance with the Convention on the Rights of the Child (995_021) and other international instruments.

Article 284. Adoption of a Child who is an Alien and Resides in Ukraine

1. A child who is an alien and resides in Ukraine may be adopted by Ukrainians nationals or aliens residing in Ukraine, on the general basis.

Article 285. Restrictions on the Alien's Right to the Confidentiality of the Adoption of a Child who is a National of Ukraine

1. The adoption of a child who is a national of Ukraine by a person who is a national of the State with which Ukraine has not signed an agreement on legal assistance shall not be confidential as long as the adoption of children in the State where the adopter habitually resides and where the child has to move is not confidential.

2. The adoption of a child who is a national of Ukraine by a person who is a national of the State with which Ukraine has not signed an agreement on legal assistance shall not be confidential as long as the adopter does not habitually resides in Ukraine.

Article 286. Adoption by an Alien of a Child who is an Alien or Stateless Person in Ukraine

1. An alien or a stateless person may adopt a child who is an alien or stateless person in Ukraine in accordance with laws of Ukraine unless international treaties of Ukraine provides otherwise.

Article 287. Control of the Respect for the Rights of Children Adopted by Aliens

1. Whenever children have been adopted by aliens and living outside the limits of Ukraine, the consular post concerned, upon instruction of the Ministry for Foreign Affairs of Ukraine, keeps a register of such children and exercises control of the respect for

their rights till they have reached the age of 18.  The manner in which control of the respect for the rights of children who have been adopted by aliens and living outside the limits of Ukraine should be exercised is established by the Cabinet of Ministers of Ukraine.

Article 288. Extending Custody, Care to a Child who is a National of Ukraine but Resides Outside the Limits of Ukraine, as well as to a Child who is an Alien but Resides in Ukraine. Recognition of the Custody or Care Granted Outside the Limits of Ukraine

1. The custody, care of a child who is a national of Ukraine but resides outside the limits of Ukraine, as well as of a child who is an alien but resides in Ukraine shall be granted in accordance with law of Ukraine.

 2. The custody, care of a child who is a national of Ukraine but resides outside the limits of Ukraine, such custody, care being granted under law of a foreign State, are valid in Ukraine unless the consular post or diplomatic mission of Ukraine concerned objects to.

3. The custody, care, which has been extended to a child, who is an alien, outside the limits of Ukraine under law of another State is valid in Ukraine.

Article 289. Registration of Marriage, Child's Birth, Recognition of Parentage, Dissolution of Marriage of Ukrainian Nationals Residing outside the Limits of Ukraine

1. Registration of marriage, child's birth, recognition of parentage, dissolution of marriage of Ukrainian nationals residing outside the limits of Ukraine shall be conducted in consular posts or diplomatic missions of Ukraine in accordance with laws of Ukraine. Ukrainian legislation is applied to the registration of civil status acts in consular posts or diplomatic missions of Ukraine if the persons concerned are nationals of Ukraine.

Article 290. Recognition of Documents Issued by Foreign States to Certify Civil Status Acts

1. Documents issued by competent authorities of foreign States to certify civil status acts completed outside the limits of Ukraine under laws of the States concerned in respect of Ukrainian nationals, aliens, and stateless persons are valid in Ukraine on the condition of their consular certification.

Article 291. Application of Laws of Foreign States

1. Family legislation of foreign States applies in Ukraine unless it conflicts with basic principles governing family relationships as laid down in Article 7 of the present Code.

Article 292. Recognition in Ukraine of Civil Status Acts Registered under Laws of Foreign States

1. Ukraine recognizes civil status acts, which have been registered under laws of foreign States.

**Section VII** FINAL PROVISIONS

1. The present Code shall enter into force the day on which the Civil Code of Ukraine has become effective.