**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

NATALIA POZNIAK,

                      Petitioner,

      v.

VLADIMIR SHWARTSMAN,

                      Respondent.

Case No. 20-cv-02956-AMD-RML

Electronically Filed

---

**PETITIONER'S REPLY IN SUPPORT OF PETITION UNDER THE HAGUE CONVENTION FOR THE RETURN OF THE CHILD**

 

AKIN GUMP STRAUSS HAUER & FELD LLP
Robert H. Pees
Saurabh Sharad
John P. Kane
Victoria Fydrych (*Admission Forthcoming*)
One Bryant Park
New York, New York 10036
Telephone: 212-872-1000

*Counsel for Petitioner*

## TABLE OF CONTENTS

**Page**

BACKGROUND ..............................................................................................................................1

ARGUMENT ..................................................................................................................................3

    I.    RESPONDENT'S CLAIMS HERE ARE BARRED BY *RES JUDICATA* ........................3

    II.    PETITIONER HAS ESTABLISHED A *PRIMA FACIE* CASE .........................................4

        A.    Israel is the Child's Habitual Residence ............................................................5

        B.    Ms. Pozniak satisfies the remaining *Gitter* prongs. ............................................8

    III.    RESPONDENT HAS FAILED TO ESTABLISH AN AFFIRMATIVE DEFENSE .....8

CONCLUSION ..............................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Blondin v. Dubois*,
   238 F.3d 153 (2d Cir. 2001)..................................................................................................9

*Casimiro v. Chavez*,
   06-CV-1889-ODE, 2006 WL 2938713 (N.D. Ga. Oct. 13, 2006)........................................10

*Friedrich v. Friedrich*,
   78 F.3d 1060 (6th Cir. 1996) ................................................................................................7

*Gitter v. Gitter*,
   396 F.3d 124 (2d Cir. 2005)...............................................................................................4, 5

*In re Koc*,
   181 F. Supp. 2d 136 (E.D.N.Y. 2001) ..................................................................................9

*Mendoza v. Miranda*,
   525 F. Supp. 2d 1182 (C.D. Cal. 2007) ...............................................................................10

*Miltiadous v. Tetervak*,
   686 F. Supp. 2d 544 (E.D. Pa. 2010) ...................................................................................10

*Monahan v. N.Y.C. Dep't of Corr.*,
   214 F.3d 275 (2d Cir. 2000)..................................................................................................4

*Monasky v. Taglieri*,
   140 S. Ct. 719 (2020).............................................................................................................5

*Mota v. Castillo*,
   692 F.3d 108 (2d Cir. 2012)..................................................................................................4

*Olguin v. Santana*,
   03-cv-6299 (JG), 2004 WL 1752444 (E.D.N.Y. Aug. 5, 2004) ...........................................8

*In re R.V.B.*,
   29 F. Supp. 3d 243 (E.D.N.Y. 2014) ....................................................................................9

*Souratgar v. Lee*,
   720 F.3d 96 (2d Cir. 2013)........................................................................................8, 9, 10

*Wtulich v. Filipkowska*,
   16-cv-2941 (JO), 2019 WL 1274694 (E.D.N.Y. Mar. 20, 2019) ..........................................7

**Statutes**

22 U.S.C. § 9003(e)(1)(A) ...................................................................................................5

Hague Convention, Ch. 1, art. 3(a) .....................................................................................5

Legal Capacity and Guardianship Law, 5722-1962 (1962) (Isr.) .......................................9

**Other Authorities**

Fed. R. Civ. P. 5.2 ...............................................................................................................1

Ten days ago, an Israeli court held that Israel was the habitual residence of Petitioner's son S.P.,[1] that Petitioner had custodial rights that she was exercising when her son was abducted, and that Respondent had violated those custodial rights. Though unstated in Respondent's opposition papers, the Israeli court decision is sound and controlling. Under the Hague Convention, the child must be returned to Israel, which poses no grave risk or any other threat to the child.

## BACKGROUND

Petitioner Natalia Pozniak gave birth to S.P., Respondent's son, in June 2011 in Lugansk, Ukraine. Petition at ¶ 14. Ms. Pozniak and S.P. moved to Israel permanently in May 2014, and S.P. became a citizen of Israel, where he resided before his father, the Respondent Vladimir Shwartsman, wrongfully retained him in the United States in 2019. *Id.* at ¶¶ 21, 22. While the parents did not have formal agreements regarding custody of the child, they shared custody of the child under an informal arrangement. *Id.* at ¶ 25. S.P. enjoyed a vibrant and fulfilling life in Israel: he was enrolled in school, participated in several sports and activities at his local community center, and was surrounded by friends and loved ones. *Id.* at ¶ 27–28.

The father traveled to the United States with S.P. in November 2015, the first in a series of annual, one-month vacations to the United States with S.P., typically during the summer school holiday. *Id.* at ¶ 29, 31. Around 2016, Mr. Shwartsman began pursuing permanent residency in the United States and expressing his intent to move to the United States. *Id.* at ¶ 30. However, Mr. Shwartsman never told Ms. Pozniak that he planned to move S.P. to the United States permanently, and thus Ms. Pozniak never agreed to such a plan. *Declaration of Natalia Pozniak* (ECF No. 26) ("Pozniak Decl.") at ¶¶ 2, 9.

---

[1] To comply with Rule 5.2 of the Federal Rules of Civil Procedure, Petitioner redacts the full name of her son from this Reply, and also attaches similarly redacted versions of each supporting exhibit that includes her son's full name or date of birth. Petitioner is ready to provide original copies of all redacted exhibits should be Court find their review necessary.

As he had done in the past, Mr. Shwartsman sought to travel with S.P. to the United States in July 2019 and assured Ms. Pozniak that he would return to Israel with S.P. before school started in September 2019. Petition at ¶ 39. However, in or around late August 2019, after Mr. Schwartsman and S.P. had left Israel, Mr. Shwartsman informed Ms. Pozniak that he and S.P. were being delayed in the United States because Mr. Shwartsman needed to complete some documents related to his immigration petition. *Id.* at ¶ 50. Ms. Pozniak was shocked because the parents had agreed that S.P. would return to Israel by September 1, 2019. *Id.* From this point forward, Ms. Pozniak regularly asked Mr. Shwartsman on WhatsApp when he would return to Israel with S.P. and reminded him that he was in violation of their agreement to return S.P. to Israel by September 1, 2019—questions Mr. Shwartsman often ignored. *Id.* at ¶ 57.

At this time, unjustly separated from her abducted child, Ms. Pozniak was despondent and traumatized. Pozniak Decl. at ¶ 6. Once she came to the realization that Mr. Shwartsman would not return S.P. to Israel for an extended period of time, and to maintain an open line of communication with her son and ensure he remained happy and healthy in the United States, Ms. Pozniak sent text messages via WhatsApp to Mr. Shwartsman to placate him. *Id.* She never stopped demanding that Mr. Shwartsman return her son to Israel, however. *Id.* at ¶ 3.

After the school year began on approximately September 1, 2019, Ms. Pozniak contacted the teachers and staff at Avital Elementary School, where S.P. had attended school in Israel and where he was supposed to attend in 2019. *Id.* at ¶ 7. The school principal, Hila Kidush, informed Ms. Pozniak that she had communicated with Mr. Shwartsman about S.P.'s return dates to Israel. *Id.* The principal sent Ms. Pozniak a letter Mr. Shwartsman wrote to the school, dated August 27, 2019, asking that the school retain S.P.'s spot because would return to Israel in October 2019, after the Jewish holidays. *Id.*; *see also* Ex. B to the Pozniak Decl. In October 2019, the principal

2

contacted Mr. Shwartsman again asking whether to retain S.P.'s spot in school. *Id.* In a letter dated October 22, 2019, Mr. Shwartsman explained that S.P. was registered for school in New York and that his date of return to Israel was now unknown. *Id.*; *see also* Ex. C to Pozniak Decl.

After hearing about the principal's communications with Mr. Shwartsman, Ms. Pozniak finally concluded that Mr. Shwartsman had no intention of returning S.P. and took legal action, eventually filing this Petition. *See* Petition at ¶¶ 54-55; 64–65. Also in May 2020, Ms. Pozniak commenced an action in the Family Court of Kiryat Shmona, Israel captioned *Natalia Pozniak v. Vladimir Shvartsman*, 61676-05-20. Pozniak Decl. at ¶ 5. On August 25, 2020, that Court issued its decision (Exhibit D to the Pozniak Declaration) (the "Decision"), holding that "the removal of [S.P.] from his place of residence in Israel was done unlawfully, under Israeli law, in violation of [Ms. Pozniak's] rights of custody of [S.P] within the meaning of the Hague Convention." *Id.*

## ARGUMENT

The issues before this Court are whether Mr. Shwartsman is barred by *res judicata* from re-litigating his claims regarding the Ms. Pozniak's *prima facie* case for wrongful retention under the Hague Convention—which he is—and whether Mr. Shwartsman has established any of the Hague Convention's allowed defenses—which he has not.

**I.     RESPONDENT'S CLAIMS HERE ARE BARRED BY *RES JUDICATA***

The Decision is a final adjudication on the merits of Ms. Pozniak's *prima facie* case under the Hague Convention, and thus bars Mr. Shwartsman from re-litigating the issue here.[2] A claim is barred by *res judicata* where "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; (3) the claims asserted in

---

[2] Even if the Decision were not *res judicata*, its findings of fact and conclusions of law are nonetheless entitled to comity here  *See Petitioner's Memorandum of Law in Support of Motion for Judicial Notice and Extension of Comity* (ECF No. 24).

3

the subsequent action were, or could have been raised, in the prior action." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000). These three elements have been satisfied here. First, the Israeli court reached a decision on the merits on the three issues that are germane to the Petition: namely, whether Israel was the Child's habitual residence (it is); whether Ms. Pozniak had custodial rights and was exercising her custodial rights at the time of the abduction (she did, and she was); and whether her custodial rights had been violated under Israeli law (they had). *See* Ex. D to Pozniak Decl. Second, the parties in these two actions are identical. Third, Mr. Shwartsman asserted the exact same arguments in the Israeli proceeding that he has here. *Id.* at ¶¶ 25, 27, 28, 30, 31. Mr. Shwartsman is therefore barred from re-litigating whether his retention of S.P. was wrongful under Article 3 of the Convention.

## II. PETITIONER HAS ESTABLISHED A *PRIMA FACIE* CASE

"The Hague Convention is primarily concerned with the use of force to establish artificial jurisdictional links on an international level, with a view to obtaining custody of a child." *Gitter v. Gitter*, 396 F.3d 124, 129 (2d Cir. 2005) (internal citation and quotations omitted). "To deter family members from removing children to jurisdictions more favorable to their custody claims," the Convention "places at the head of its objectives the restoration of the *status quo*, by means of the prompt return of children wrongfully removed to or retained in any Contracting State." *Id.* at 129–30. Thus, the focus of the Hague Convention is not on the merits of a child's custody, but rather "simply upon whether a child should be returned to her country of habitual residence for custody proceedings." *Mota v. Castillo*, 692 F.3d 108, 112 (2d Cir. 2012).

To state a *prima facie* case under the Hague Convention, Ms. Pozniak must show "(1) the child was habitually resident in one State and has been removed to or retained in a different State; (2) the removal or retention was in breach of the [her] custody rights under the law of the State of habitual residence; and (3) [she] was exercising those rights at the time of the removal or

4

retention." *Gitter*, 396 F.3d at 130–31. Ms. Pozniak establishes each of these elements by the preponderance of the evidence. 22 U.S.C. § 9003(e)(1)(A).

### A. Israel is the Child's Habitual Residence

Mr. Shwartsman can make no realistic argument that S.P.'s home country—prior to his removal—is any place other than Israel, and his own papers confirm as much. *See, e.g.*, *Declaration of Vladimir Shvartsman* (ECF No. 16) ("Shvartsman Decl.") ¶¶ 40, 43, 44, 46 (providing examples of S.P.'s "vibrant and fulfilling life" in Israel). Instead, he insists that Ms. Pozniak agreed to her son's permanent move to a place she cannot visit, and without any plan as to when or how she would be able to see her son again. His argument falls far short.

The Hague Convention asks a court to determine habitual residence "immediately before the removal or retention." Hague Convention, Ch. 1, art. 3(a). There is no definition of "habitual residence" in the treaty, but the Supreme Court has clarified that a "child's habitual residence depends on the totality of the circumstances specific to the case" and that "the determination of habitual residence does not turn on the existence of an actual agreement" between parents. *Monasky v. Taglieri*, 140 S. Ct. 719, 723, 726 (2020). Rather, the determination of a child's "home" is a "fact-driven inquiry," where "[n]o single fact … is dispositive across all cases" and where courts should be "informed by common sense." *Id.* at 727 (internal citations and quotations omitted).

Mr. Shwartsman argues that the Child's "home" was always with his father. *Respondent's Memorandum of Law in Opposition to Petition for Return of Child* (ECF No. 20) (the "Opposition") at 24. But he fundamentally misinterprets the law—the purpose of the Hague Convention is not to determine *with whom* a child is at home, but rather *in what country* a child is at home so courts in that country can determine custody. *Monasky*, 140 S. Ct. at 723. Here, the totality of the circumstances overwhelmingly demonstrate that Israel is S.P.'s habitual residence.

5

Mr. Shwartsman chiefly argues that Ms. Pozniak knew of and agreed to Mr. Shwartsman's plan to move to and permanently reside in the United States with S.P. But Ms. Pozniak never understood that to be Mr. Shwartsman's intention, and the statements Mr. Shwartsman cites do not support his claim. For example, Mr. Shwartsman points to Ms. Pozniak's awareness of *Mr. Shwartsman's* intent to move, including certain statements he made to Ms. Pozniak before he left for the United States. *See* Shvartsman Decl. at ¶¶ 55, 56. These statements, however, do not suggest Ms. Pozniak agreed to Mr. Shwartsman's plan to live with S.P. in the United States permanently; rather, they suggest only that *Mr. Shwartsman* wanted to relocate to the United States, and say nothing about his intentions to move their son.[3]

Mr. Shwartsman also quotes recorded conversations between the parents (recordings to which Ms. Pozniak's counsel has no access) that he has taken the liberty of translating. Even if his version of the conversation is accurate, nothing in the conversation shows any agreement or intent of Ms. Pozniak to abandon her son. For instance, Mr. Shwartsman claims that during an October 4, 2019 conversation between the parents, Ms. Pozniak "confirms that she permitted [S.P.] to move with [Mr. Shwartsman] permanently to the United States," but Ms. Pozniak confirms no such thing. *See id*. at ¶¶ 78–80. Mr. Shwartsman also quotes portions of a conversation that allegedly took place between the parents on September 21, 2019, during which Ms. Pozniak purportedly expressed that she no longer wanted to speak to her son or Mr. Shwartsman again. *See id.* at ¶ 82. But correspondence from before and after this conversation, along with her nearly year-long effort to return her son, conclusively show that she was not abandoning her child. *See*, *e.g.*, *id.* at ¶ 89 (acknowledging Ms. Pozniak's ongoing communication with her son).

---

[3] Mr. Shwartsman also references meetings and conversations with friends during which Pozniak overheard Mr. Shwartsman or even supported Mr. Shwartsman's plan to permanently move to the United States with the Child. *See* Shvartsman Decl. at ¶¶ 61, 65; *see also* Declaration of Karen Pagosov (ECF No. 13) at ¶¶ 4–6; Declaration of Gregory Lifshits (ECF No. 15) at ¶¶ 4–7. These conversations never happened. *See* Pozniak Decl. at ¶¶ 7, 8.

6

As one could imagine, at this time Ms. Pozniak was despondent and traumatized at the abduction of her son, and spoke to Mr. Shwartsman in any way to maintain an open line of communication to her son and to placate Mr. Shwartsman. Pozniak Decl. at ¶ 6. The communications that Mr. Shwartsman points to do not show acquiescence; rather, they show a desperate mother placating a father who has abducted her child, and is seeking to speak to her son again. *See Friedrich v. Friedrich*, 78 F.3d 1060, 1070 (6th Cir. 1996) ("Each of the words and actions of a parent during the separation are not to be scrutinized for a possible waiver of custody rights."); *see also Wtulich v. Filipkowska*, 16-cv-2941 (JO), 2019 WL 1274694, at *9 (E.D.N.Y. Mar. 20, 2019) (rejecting acquiescence defense where left behind parent sent placating emails).

Mr. Shwartsman also claims that Ms. Pozniak only began demanding that Mr. Shwartsman return S.P. to Israel once her legal status expired at the "end of October 2019." Opp. at ¶ 68; *see also* Shvartsman Decl. at ¶¶ 84, 87. Not true. Ms. Pozniak asked Mr. Shwartsman via WhatsApp when he would return her son on August 26, September 6, September 24, October 3, and October 30, 2019, and continued to pepper him on the issue through the end of 2019. *See* Pozniak Decl. at ¶ 3; *see also* Ex. A to Pozniak Decl. These communications—as well as Ms. Pozniak's efforts to seek her son's return by initiating legal action in Israel in mid-October 2019, *see* Petition at ¶ 55— dismantle any argument that Ms. Pozniak agreed to the permanent move of her son.

What's more, Mr. Shwartsman's own actions and communications reinforced Ms. Pozniak's belief that Mr. Shwartsman and S.P. had gone to the United States for their annual vacation. On August 27, 2019, Mr. Shwartsman communicated with an official at S.P.'s school in Israel and confirmed that S.P. would attend school in the fall and thus requested that the school leave a spot open for S.P. *See* Ex. B to Pozniak Decl. Only on October 22, 2019 did Mr.

7

Shwartsman explain that S.P.'s date of return to Israel was unknown. Pozniak Decl. at ¶ 4; *see also* Ex. C to Pozniak Decl. In short, the parents did not agree to any permanent move of S.P.

### B. Ms. Pozniak satisfies the remaining *Gitter* prongs.

Under Israeli law, absent a court order to the contrary, both parents have equal rights of guardianship in Israel, regardless of who has primary physical custody. *See* Legal Capacity and Guardianship Law, 5722–1962, §§ 14–15 (1962) (Isr.). And, to show that custody rights were exercised, Ms. Pozniak "need only provide some preliminary evidence that [she] actually exercised custody of the child, for instance, took physical care of the child." *See Olguin v. Santana*, 03-cv-6299 (JG), 2004 WL 1752444, at *4 (E.D.N.Y. Aug. 5, 2004) (internal citations omitted).

Mr. Shwartsman concedes Ms. Pozniak's custody rights in his Declaration, in which he admits that (i) there was no court order or formal custody arrangement between the Parents, and thus each Parent enjoyed custodial rights over the Child, and (ii) Ms. Pozniak actually exercised custody by spending time with the Child. *See* Shvartsman Decl. at ¶¶ 33, 36. Furthermore, Mr. Shwartsman's unilateral retention of S.P. violated Ms. Pozniak's right as a mother to determine the her son's place of residence under Israeli law. Thus, Ms. Pozniak has established that her son's retention was wrongful within the meaning of the Hague Convention.

### III. RESPONDENT HAS FAILED TO ESTABLISH AN AFFIRMATIVE DEFENSE

As Ms. Pozniak has established a *prima facie* claim for her son's return, S.P. must therefore be returned to Israel unless Mr. Shwartsman can establish an affirmative defense to the Petition. *Souratgar v. Lee*, 720 F.3d 96, 100 (2d Cir. 2013). Mr. Shwartsman's sole defense is that there is

a "grave risk" that S.P.'s return to Israel would expose S.P. to physical, psychological, and/or neurological harm, and/or otherwise place him in an intolerable situation.[4] This defense fails.

"The level of risk and danger required to trigger this exception under Article 13(b) has consistently held to be very high." *In re Koc*, 181 F. Supp. 2d 136, 155 (E.D.N.Y. 2001) (internal citation, quotations, and alterations omitted). "'Grave risk of harm' arises in two situations: '(1) where returning the child means sending him to a zone of war, famine, or disease; or (2) in cases of serious abuse or neglect, or extraordinary emotional dependence, when the court in the country of habitual residence, for whatever reason, may be incapable or unwilling to give the child adequate protection.'" *In re R.V.B.*, 29 F. Supp. 3d 243, 258 (E.D.N.Y. 2014) (quoting *Souratgar*, 720 F.3d at 103). The grave risk exception is to be interpreted narrowly, so as not to "swallow the rule." *Souratgar*, 720 F.3d at 103 (internal citations omitted).

Mr. Shwartsman argues that S.P. suffers from separation anxiety disorder, depression, and needs to be near Mr. Shwartsman at all times, and thus S.P. will suffer psychological harm if he is returned to Israel "where nothing is waiting for him." Opp. at 29; *see also* Shvartsman Decl. at ¶¶ 58, 64, 77. These allegations do not meet the high bar the grave risk defense requires. Mr. Shwartsman's assertion that the Opposition presents the "textbook type of grave risk of psychological harm" that warrants denial of the Petition is meritless, primarily because the *Blondin* decision he relies on is completely inapposite. *See Blondin v. Dubois*, 238 F.3d 153 (2d Cir. 2001) (addressing an "exceptional case" involving years of physical abuse where return of "deeply rooted" child would unavoidably trigger PTSD, and home country's courts were powerless to ameliorate). Mr. Shwartsman's allegations fall far short of the egregious facts presented in

---

[4] Mr. Shwartsman raises seven defenses in the *Response to Petition for Return of Child to Petitioner*, ECF No. 12, but only addresses the grave risk defense in the Opposition. In this Reply, Ms. Pozniak will only respond to the grave risk defense.

9

*Blondin*. To the contrary, the Opposition indicates that S.P. would return to a supportive and welcoming environment in Israel. Shvartsman Decl. at ¶ 44 ("The Child was surrounded by friends and loved ones in Israel[.]"); *see also id.* at ¶¶ 40, 43, 46; Furman Decl. at ¶ 5 ("The child often came over my house for ice cream."); Goren Decl. at ¶ 3 ("[S.P.] was a great friend to my kids and they always played in our house or in Vladimir's house."). In any event, Mr. Shwartsman makes no argument why he cannot return to Israel with his son, thus avoiding the alleged harm, even if only temporarily to adjudicate the merits of the parties' custody dispute. His Declaration confirms that he is a permanent resident in the United States, and is thus free to travel abroad. Shvartsman Decl. ¶ 3. His arguments simply cannot establish a grave risk by clear and convincing evidence.

Mr. Shwartsman also argues that the *potential* deportation of Ms. Pozniak from Israel to Ukraine presents "an intolerable" situation that satisfies the grave risk defense and warrants denial of the Petition. His argument is completely unfounded.[5] On the merits, Mr. Shwartsman's speculation about any potential threat of deportation does not satisfy his burden to make "a clear and convincing case" that the harm is "likely to occur." *Souratgar*, 720 F.3d at 106. In any event, Ms. Pozniak's legal status in Israel is a matter for the Israeli courts to weigh in determining the parents' allocation of custody rights over S.P. and has no relevance to the proceedings here.

## CONCLUSION

For the reasons set forth above, the Court should grant the Petition for relief under the Hague Convention and order S.P.'s immediate return to Israel and all other relief as the Court deems just and proper.

---

[5] None of Mr. Shwartsman's authority is on point. *Miltiadous v. Tetervak*, considers the respondent's immigration status *in the United States* as part of the broad habitual residence inquiry, not the much more narrow "grave risk" defense. 686 F. Supp. 2d 544, 552 n.9 (E.D. Pa. 2010). *Mendoza v. Miranda*, 525 F. Supp. 2d 1182, 1195 (C.D. Cal. 2007) considers the child's immigration status in the context of the "well-settled" defense, and *Casimiro v. Chavez*, 06-CV-1889-ODE, 2006 WL 2938713, at *6–7 (N.D. Ga. Oct. 13, 2006) considers the child's immigration status in its exercise of discretion to return a child despite her preference to remain in the United States.

10

| | |
|---|---|
| New York, New York<br>Dated: September 4, 2020 | AKIN GUMP STRAUSS HAUER & FELD LLP<br><br>　　*/s/ Robert H. Pees*<br>Robert H. Pees<br>Saurabh Sharad<br>John P. Kane<br>Victoria Fydrych (*Admission Forthcoming*)<br>One Bryant Park<br>New York, New York 10036<br>Telephone: (212) 872-1000<br>Facsimile: (212) 872-1002<br>E-mail: rpees@akingump.com<br>E-mail: ssharad@akingump.com<br>E-mail: jkane@akingump.com<br>E-mail: vfydrych@akingump.com<br><br>*Counsel for Petitioner* |