**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

NATALIA POZNIAK,

                      Petitioner,

        v.

VLADIMIR SHWARTSMAN,

                      Respondent.

Case No. 20-cv-02956-AMD-RML

---

## JOINT STATEMENT OF STIPULATED FACTS

IT IS HEREBY STIPULATED AND AGREED by and among Natalia Pozniak ("Petitioner") and Vladimir Shwartsman ("Respondent") that:

1.      Petitioner Natalia Pozniak was born in the former Soviet Union in 1981. She is a Ukrainian citizen residing in Israel. Petitioner has lived in Israel continuously since 2014 and currently resides in Kiryat Motzkin, a suburb of Haifa, Israel. *See* Petition Under the Hague Convention for the Return of the Child (ECF No. 1) (the "Petition") at ¶ 8; Declaration of Vladimir Shvartsman (ECF No. 16) ("Resp. Decl.") at ¶ 5.

2.      Respondent Vladimir Shwartsman was born in Kazakhstan in 1977. He is an Israeli citizen. Respondent currently resides at 5819 188th Street, Fresh Meadows, New York. *See* Petition at ¶ 9; Response to Petition for Return of Child to Petitioner (ECF No. 12) (the "Response") at ¶ 9; Resp. Decl. at ¶ 4.

3.      S.P.[1] (the "Child") is the biological son of Petitioner and Respondent.  The Child was born in Ukraine in June 2011.  He is a dual Israeli-Ukrainian citizen.  Before July 19, 2019, S.P. lived in Israel for most of his life.  The Child currently resides with Respondent and Respondent's wife in Fresh Meadows, New York. *See* Petition at ¶ 10; Response at ¶ 10; Resp. Decl. at ¶ 12.

4.      Petitioner and Respondent met online in or around May 2010.  *See* Petition at ¶ 11; Response at ¶ 11.

5.      Petitioner and Respondent have never been married.  *See* Petition at ¶ 12; Response at ¶ 12.

6.      In May of 2010, Respondent met the Petitioner through the Internet.  At that time, Respondent resided in Israel and the Petitioner lived in Ukraine.  After approximately two and a half months of communication by Internet and phone, the Petitioner decided to come to Israel.  After meeting online, Petitioner visited Respondent in Israel in August 2010.  During her stay in Israel, the Petitioner stayed with Respondent in his home.  In October 2010, Petitioner learned she was pregnant and returned to Ukraine that month.  *See* Petition at ¶ 13; Response at ¶ 13; Resp. Decl. at ¶ 6.

7.      In June 2011, Petitioner gave birth to S.P. in Lugansk, Ukraine.  The Child's birth certificate identifies Petitioner as his mother and "Vladimir Pozniak" as his father.  Petitioner and S.P. lived together in Ukraine.  *See* Petition at ¶ 14; Response at ¶ 14; Resp. Decl. at ¶¶ 12, 13.

8.      Towards the end of the summer in 2012, Petitioner and S.P. moved to Israel.  After one year, in or around September 2013, Petitioner moved with S.P. back to Ukraine.  In November

---

[1] To comply with Rule 5.2 of the Federal Rules of Civil Procedure, the parties redact the full name of their son from this statement.

or December 2013, Respondent visited Petitioner and S.P. in Ukraine for two to three weeks. *See* Petition at ¶ 18; Response at ¶ 18; Resp. Decl. at ¶ 21.

9.      In the spring of 2014, Petitioner and S.P. returned to Israel to live with Respondent. Since then, S.P. has lived continuously in Israel until Respondent brought him to the United States on July 19, 2019. *See* Petition at ¶ 21; Resp. Decl. at ¶¶ 26, 46.

10.     Using his status as an Israeli citizen, Respondent helped S.P. and Petitioner obtain immigration status in Israel. S.P. became an Israeli citizen, and Petitioner acquired a work visa and, later, a temporary residence card. *See* Petition at ¶ 22; Response at ¶ 22; Resp. Decl. at ¶ 46.

11.     In or around September 2015, Petitioner and Respondent began living in separate residences in Israel, but S.P. stayed in the same kindergarten. *See* Petition at ¶ 24; Response at ¶ 24.

12.     Though Petitioner and Respondent did not have a formal custody agreement, they worked out an informal arrangement pursuant to which both exercised shared custody over S.P. Petitioner and Respondent had a relationship of mutual understanding and assistance, with both parties communicating openly about shared custody of their son. *See* Petition at ¶ 25–26; Response at ¶ 26; Resp. Decl. at ¶¶ 33, 37.

13.     There are no orders or other agreements that limit Petitioner's custodial rights over the Child under Israeli law. Petition at ¶ 68; Ex. A to Petitioner's Memorandum of Law in Support of Motion for Judicial Notice and Extension of Comity (ECF No. 24) (the "Decision") at ¶ 62.

14.     S.P. enjoyed a vibrant and fulfilling life in Israel. S.P. began attending kindergarten in 2014 and elementary school in 2017. At school, the Child's teachers had expressed some concern with "his difficulties in learning and functioning." S.P. received therapy through horse-riding at a nearby educational nature center. He also participated in several sports and activities at

his local community center, including soccer and karate.  *See* Petitioner at ¶ 27; Response at ¶ 27;

Resp. Decl. at ¶¶ 40, 43.

15.     The Child was surrounded by friends and loved ones in Israel, including neighbors

and friends.  He frequently played with his classmates and with children of the Petitioner's friends.

Petitioner's parents would also regularly visit S.P. and Petitioner in Israel twice a year from

Ukraine and would typically stay for about one month each time.  *See* Petition at ¶ 28; Response

at ¶ 28; Resp. Decl. at ¶ 44.

16.     In November 2015, Respondent and the Child visited the United States for the first

time for a sightseeing trip.  *See* Petition at ¶ 29; Response at ¶ 29; Resp. Decl at ¶ 47.  Including

that first trip in November 2015, S.P. came to the United States for a total of three visits prior to

July 2019.  Each visit lasted between 2–3 weeks and was during S.P.'s summer vacation from

school.  *See* Petition at ¶ 31; Resp. Decl. at ¶ 49.

17.     Petitioner and Respondent always discussed the approximate length of these short

trips before Respondent and S.P. left Israel.  Typically, Petitioner and Respondent would agree

upon the date that Respondent and the Child would depart from Israel.  To maintain some flexibility

for Respondent and S.P. and to take advantage of the most cost-efficient return flights, however,

Petitioner and Respondent would jointly decide on the Child's exact date of return after Petitioner

and Respondent had arrived in the United States.  *See* Petition at ¶ 32; Response at ¶ 32; Resp.

Decl. at ¶¶ 50, 51.

18.     During these trips, Petitioner would speak with S.P. every day and confirm that the

Child's accounts of the day matched Respondent's purported itinerary.  *See* Petition at ¶ 33;

Response at ¶ 33; Resp. Decl. at ¶ 52.

19.     Around 2016, Respondent began pursuing permanent residency in the United States.  *See* Petition at ¶ 30; Response at ¶ 30; Resp. Decl. at ¶ 48.

20.     Until 2019, Respondent regularly traveled back and forth between Israel and the United States to file paperwork related to his immigration petition in the United States.  *See* Petition at ¶ 36; Response at ¶ 36; Resp. Decl. at ¶ 63.

21.     In May 2019, Petitioner and Respondent participated in a meeting at S.P.'s Israeli school among S.P.'s teachers, the school psychologist, and themselves as parents, during which the Child's teachers expressed concern that S.P. had an "imbalance" in his emotional life.  *See* Petition at ¶ 37; Response at ¶ 37.

22.     Respondent decided to take S.P. on another trip to the United States in July 2019. Respondent had told S.P. that he intended to take S.P. on a cruise when they were in the United States.  *See* Petition at ¶¶ 39, 40; Response at ¶¶ 39, 40; Resp. Decl. at ¶ 66.

23.     The parties established that Respondent and S.P. would leave on July 19, 2019.  *See* Petition at ¶ 43; Response at ¶ 43.

24.     On July 19, 2019, Respondent left Israel for New York with the Child.  *See* Petition at ¶ 48; Response at ¶ 48; Resp. Decl. at ¶ 73.

25.     Around one week after S.P. left, Petitioner and Respondent communicated regarding the Child.  *See* Petition at ¶ 49; Response at ¶ 49.

26.     Respondent did not return with the Child by September 1, 2019.  *See* Petition at ¶ 51; Response at ¶ 51.

27.     Respondent has not returned S.P. and has instead taken steps to seize sole custody of S.P. in the United States.  In early March 2020, Petitioner received a package containing a custody petition filed by Respondent seeking sole custody of S.P. in Queens County Family Court

(the "Family Court Petition").  On March 12, 2020, the Department of State, the Central Authority

of the United States under the Hague Convention, gave notice to the Queens Family Court that the

Child was the subject of a Hague Convention application.  On June 23, 2020, Petitioner's counsel

sent a letter requesting the Queens Family Court indefinitely stay all proceedings in connection

with the Family Court Petition, pending resolution of this Petition, and attached a copy of the State

Department's March 12 notice.  *See* Petition at ¶ 59; Response at ¶ 59.

28.     In May 2020, the U.S. State Department connected Petitioner with pro bono counsel

to file the instant proceedings.  *See* Petition at ¶ 64.

29.     Respondent has provided financial support to Petitioner. *See* Resp. Decl. at ¶ 9.

30.     In February 2014, the Russian military began occupying the region of Ukraine

where the Petitioner and Child resided.  *See* Petition at ¶ 20.

31.     Subsequent thereto, Petitioner no longer felt safe living in Ukraine with the child.

*See* Petition at ¶ 20.

32.     On July 12, 2017, respondent's mother passed away in Israel.  *See* Petition at ¶ 35;

Resp. Decl. at ¶ 55.

33.     The Child's most recent Israeli passport is expired.

New York, New York
Dated: November 23, 2020

STIPULATED AND AGREED BY:

AKIN GUMP STRAUSS HAUER & FELD LLP

*/s/ Robert H. Pees*
Robert H. Pees
Saurabh Sharad
John Kane
Victoria Fydrych (*Admission Forthcoming*)
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
E-mail: rpees@akingump.com
E-mail: ssharad@akingump.com
E-mail: jkane@akingump.com
E-mail: vfydrych@akingump.com

*Counsel for Petitioner*

*/s/ Marcus A. Nussbaum*
Marcus A. Nussbaum, Esq.
FISHKIN, GURSHUMOV & NUSSBAUM, P.C.
3059 Brighton 7th Street, 1st Fl.
Brooklyn, NY 11235
Telephone: 718-509-0609
Fascimile: 347-572-0439
Email: mn@fgnlawfirm.com

*Counsel for Respondent*